Leo Louis JOHNSON and Belva Johnson, Appellants,

v.

ANHEUSER BUSCH, INC.; John Lewis; Everett Parton; Kenny Lorton, Appellees.

No. 88–1774.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1989.

Decided May 26, 1989.

---

Doris Gregory Black, St. Louis, Mo., for appellants.

H. Kent Munson, St. Louis, Mo., for appellees.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Leo Louis Johnson and his wife, Belva Johnson, appeal the district court's grant of summary judgment in favor of Anheuser–Busch and three individual defendants, contending that the court erred in finding that the Labor Management Relations Act (LMRA) preempted their eight-count complaint. For reasons discussed below, we affirm in part the district court's holding that the state-law counts of slander, intentional infliction of emotional distress, tortious interference with contractual relations, wrongful discharge and any loss of consortium derived therefrom are preempted by section 301 of the Labor Management Relations Act. We vacate the judgment with regard to the remaining counts and remand this case to the district court for further proceedings.

## I. BACKGROUND

Appellant Leo Louis Johnson is a machinist employed by the appellee Anheuser–Busch, Inc. Except for a period of time between May 27, 1986, and October 27, 1986, Johnson has worked for Anheuser–Busch continuously since April of 1979.

In May of 1986, appellees John Lewis, Everett Parton and Kenny Lorton, employees of Anheuser–Busch and Johnson's co-workers, reported to plant authorities that Johnson had allegedly slashed four tires on Lewis's car, parked in a company lot. An investigation followed and St. Louis City police officers arrested Johnson at the plant, charging him with destruction of property. He appeared in court and the charges were eventually dismissed.

As a result of this incident, Anheuser–Busch terminated Johnson from his job on May 27, 1986, citing as reasons the violation of: (a) plant rule number six, which prohibits "horseplay, malicious mischief or other conduct affecting the rights of other employees," and (b) plant rule number seven, which prohibits "immoral conduct or conduct which violates the common decency of fellow employees, the company or the community." (Petition Count I, ¶ 7).

Johnson grieved his discharge, following the procedures set forth in Article IX of the collective bargaining agreement.[1] The arbitrator sustained his grievance and on October 27, 1986, ordered Johnson reinstated with backpay and retroactive seniority.

In December 1987, Leo Louis Johnson filed an eight-count petition in the Circuit Court for St. Louis County against Anheuser–Busch, John Lewis, Everett Parton and Kenny Lorton (appellees). The petition alleged slander (Count I), intentional infliction of emotional distress (Count II), tortious interference with contractual relations (Count III), malicious prosecution (Count IV), false arrest (Count V), libel (Count VI), wrongful discharge (Count VII), and his wife alleged loss of consortium (Count VIII). All eight counts arose from the events surrounding the investigation of the slashed tire report and Mr. Johnson's subsequent discharge with the exception that Count VI also included an allegation that Lewis libelled Johnson when Lewis filed a claim with his insurance company accusing Johnson of property damage to his car. The Johnsons sought actual and punitive damages under each count.

The appellees petitioned for removal to federal court, citing section 301 of the Labor Management Relations Act as the basis for jurisdiction, contending that the Johnsons' suit involved an alleged breach of the collective bargaining agreement governing Mr. Johnson's employment.

After removal to federal court, the appellees moved to dismiss for failure to state a claim and alternatively moved for summary judgment, contending that all eight counts were preempted by the LMRA and barred by the six-month statute of limitations period set forth in *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 169, 103 S.Ct. 2281, 2293, 76 L.Ed.2d 476 (1983). The trial court sustained the motion after characterizing the Johnsons' petition as one stating a section 301 claim because the petition related "to the events surrounding an alleged violation of the collective bargaining agreement." It found the section 301 claim governed by the ninety-day statute of limitations period for vacating arbitration awards applied in *Johnson v. Hussmann Corp.,* 805 F.2d 795, 797 (8th Cir. 1986).[2] The court observed that fourteen

---

1. As a member of the International Association of Machinists and Aerospace Workers, Johnson's work was governed by a collective bargaining agreement requiring just cause for any discharge. Article IX sets forth a grievance procedure providing binding arbitration to resolve all disputes arising under the agreement. Section 1 reads:

    *Section 1.* A grievance within the meaning of the grievance procedure shall be defined as any difference between the employer and the

    employees covered by this agreement or between the employer and the union as to:

    (a) Any matter involving the meaning, interpretation, application or alleged violation of this agreement.

    (b) Differences or disputes not specifically mentioned in this agreement or trouble of any kind.

2. In *Wolfe v. Central Mine Equip. Co.,* 850 F.2d 469, 470 (8th Cir.1988), we held that the Supreme Court's opinion in *Lingle v. Norge Div. of*

months had elapsed between the completion of arbitration and the filing of the Johnsons' petition, and concluded that the Johnsons' petition was time barred. Furthermore, the Johnsons had failed to present any argument to toll the statute and bring their petition within the applicable statutory time limit.

This timely appeal followed.

## II. DISCUSSION

### A. Preemption

The parties in this case agree that if preemption under section 301 applies, the state-law counts at issue are time barred under either the six-month statute of limitations period set forth in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), *see DelCostello*, 462 U.S. at 169, 103 S.Ct. at 2293, or the ninety-day state statute of limitations period for vacating arbitration awards. Mo.Rev.Stat. § 435.405.2 (1986). *See Johnson*, 805 F.2d at 797. Therefore, the dispositive question before us is whether the state-law counts survive the preemptive effect of section 301. The Johnsons argue that their petition survives the preemptive effect of section 301 because its resolution does not require an analysis of the terms of the collective bargaining agreement.

The LMRA grants federal courts jurisdiction over "[s]uits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Labor Management Relations Act of 1947, § 301, 29 U.S.C. § 185(a) (1982). The Supreme Court has interpreted section 301 as preempting state-law tort claims in situations where the resolution of the state-law claim substantially depends upon interpreting the terms of the collective bargaining agreement. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). If the state-law tort claim is "inextricably intertwined with consideration of the terms of the labor contract," the state-law tort claim is preempted. *Id.* at 213, 105 S.Ct. at 1912.

Preemption under section 301 will not apply, however, in all instances in which a collective bargaining agreement is present. Where a state-law remedy is independent of a collective bargaining agreement in the sense that resolution of the state-law claim does not require construing the collective bargaining agreement, preemption is inapplicable. *Lingle v. Norge Div. of Magic Chef, Inc.*, — U.S. —, 108 S.Ct. 1877, 1882, 100 L.Ed.2d 410 (1988). This principle applies even if analysis of the same set of facts would be required to resolve a dispute arising directly under the collective bargaining agreement or a dispute arising under state tort law. *Id.* 108 S.Ct. at 1883.

This court recently examined the preemption issue in *Hanks v. General Motors Corp.*, 859 F.2d 67 (8th Cir.1988). We determined that the preemption issue cannot be resolved solely on the allegations found in the complaint. Rather, "defenses, as well as claims, must be considered in determining whether resolution of the state law claim requires construing the collective bargaining agreement." *Id.* at 70. *Accord, Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir.1988) (scope of section 301 preemption not based on how the complaint is framed but on whether the claims can be resolved only by referring to the terms of the collective bargaining agreement); *Barron v. Safeway Stores, Inc.*, 704 F.Supp. 1555 (E.D.Wash.1988) (state-law claim preempted only when the claim's resolution involves interpretation of the language of the collective bargaining agreement).

With these standards and principles in mind, we examine each state-law count to determine whether interpretation of the collective bargaining agreement is necessary to resolve the count.

Mr. Johnson alleges in Count I that Lewis, Lorton and Parton slandered him by making false accusations about the tire

---

*Magic Chef*, — U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), had rendered *Johnson* obsolete, insofar as it held that federal labor law

preempts a state-law tort action of retaliatory discharge for filing a worker's compensation claim.

slashing incident and that those statements resulted in Mr. Johnson's discharge. The statements in question refer to the ongoing employment relationship between Mr. Johnson and Anheuser–Busch. As such, they relate to a dispute over an event occurring at the workplace and would be governed by the grievance procedure set forth in Article IX of the collective bargaining agreement. This count cannot be resolved without interpreting or analyzing the terms of the collective bargaining agreement. Thus, section 301 preemption applies.

■ Similarly, Mr. Johnson's second count, alleging intentional infliction of emotional distress, arises out of his discharge and the appellees' conduct in the investigation leading up to it. Specifically, Johnson alleged in his petition that the outrageous conduct of Anheuser–Busch and its employees and the statements made by Parton, Lewis and Lorton "caused [him] severe and great emotional distress, and such accusations led to [his] arrest, prosecution and loss of his job." (Petition Count II, ¶ 5). To determine the merits of this allegation would require us to decide whether his discharge was warranted under the terms of the collective bargaining agreement. We conclude that this count depends substantially upon construing the collective bargaining agreement's terms. Therefore, section 301 preempts this count.

■ Count III, alleging tortious interference with contractual relations, requires an examination of the collective bargaining agreement and the scope of the employment relationship. To determine whether the appellees wrongfully interfered with Mr. Johnson's employment or caused his discharge, a court would decide whether Anheuser–Busch could rightfully discharge Mr. Johnson under the union contract. Discharge for just cause is a subject governed by the collective bargaining agreement. This count is inextricably intertwined with the collective bargaining

agreement and is preempted by section 301.

■ Similar analysis also applies to Count VII, the wrongful discharge claim. The collective bargaining agreement defines Anheuser–Busch's authority to discharge a union employee and establishes the procedures by which a union employee may challenge his discharge.[3] To assess whether Anheuser–Busch wrongfully discharged Mr. Johnson would require an inquiry into the scope of this authority. Therefore, Mr. Johnson's claim cannot be analyzed apart from the rights and obligations contained in the collective bargaining agreement and section 301 preemption applies.

■ In Count VI, Mr. Johnson alleges two forms of libel: first, that the false accusations about the tire slashing incident were reduced to writing and seen internally by Anheuser–Busch employees, and second, that John Lewis separately filed a claim with his insurance company falsely accusing Mr. Johnson of property damage to his car.

The first libel allegation directly relates to the circumstances surrounding Mr. Johnson's discharge from employment because the false accusations served as the basis for the conclusion that plant rules numbers six and seven were violated. This conclusion in turn served as the reason for Mr. Johnson's discharge. Thus, any judicial resolution of this libel allegation would necessarily involve construction of the collective bargaining agreement to determine whether Mr. Johnson was wrongfully discharged. Because this allegation is inextricably intertwined with consideration of the terms of the collective bargaining agreement, section 301 preempts this cause of action.

This same conclusion, however, cannot be reached with regard to Mr. Johnson's

---

**3.** Article IX, section 5 of the collective bargaining agreement explicitly provides for resolution of wrongful discharge allegations through use of the grievance procedure. This section states:
*Discharge Cases:* In the event of an employee being discharged from employment and he believes he has been unjustly dealt with, such discharge shall constitute a case under the method of adjusting grievances as herein provided.

libel action against John Lewis individually. Although the same set of facts, i.e., the tire slashing, serves as the basis for each libel allegation, an analysis of the same factual predicate does not necessarily mean that a state-law tort claim cannot exist independently of the collective bargaining agreement. *See Lingle,* 108 S.Ct. at 1883. If no construction of the collective bargaining agreement need be made, a separate tort action can be maintained and preemption will not apply. *Id.* Here, the elements necessary to prove the libel claim against Lewis, *see Tucker v. Delmar Cleaners, Inc.,* 637 S.W.2d 222, 224 (Mo.Ct.App.1982), do not require construction of any term of the collective bargaining agreement. Thus, section 301 preemption does not apply.

▇ Similar analysis relates to Mr. Johnson's claims of malicious prosecution, Count IV, and false arrest, Count V. The elements necessary to prove malicious prosecution, *see Hunter v. Karchmer,* 285 S.W.2d 918, 927 (Mo.Ct.App.1955), and false arrest, *see Rustici v. Weidemeyer,* 673 S.W.2d 762, 767 (Mo.1984) (en banc), do not require reference to or interpretation of the collective bargaining agreement's terms. Therefore, resolution of these state-law causes of action exists independent of the collective bargaining agreement and section 301 preemption does not apply.

▇ Lastly, Belva Johnson, Leo Johnson's wife, asserts in Count VIII a claim for loss of consortium arising out of the appellees' conduct. Loss of consortium presents a derivative claim arising out of the tort claims of the injured spouse. When an injured party cannot recover, the spouse claiming loss of consortium is also barred as a matter of law from recovery under that claim. *Stephen v. Lindell Hosp.,* 681 S.W.2d 503, 508 (Mo.Ct.App. 1984). As applied to this case, any claims of loss of consortium derived from the state-law counts of slander, intentional infliction of emotional distress, tortious interference with contractual relations and wrongful discharge would not survive because these counts are preempted by section 301. To the extent that a loss of consortium claim may be derived from the malicious prosecution, false arrest and libel counts, these loss of consortium claims, if available under state law, would not be preempted.

**B. Pendent Jurisdiction**

We briefly address whether the district court on remand should exercise jurisdiction over the nonpreempted claims.

▇ In examining this issue, we note that the decision whether to exercise jurisdiction over pendent state-law claims is a matter of discretion for the district court. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Hassett v. Lemay Bank & Trust Co.,* 851 F.2d 1127, 1130 (8th Cir.1988). This discretion remains the same regardless of whether the plaintiff initiated the suit in federal court or whether proper removal resulted in federal jurisdiction over the case. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 622, 98 L.Ed.2d 720 (1988). The district court as a discretionary matter may continue the litigation in federal court or remand the remaining claims to the state court. *See Cohill,* 108 S.Ct. at 620.

**III. CONCLUSION**

After analyzing the Johnsons' claims in light of the preemptive effect of section 301 of the LMRA, we affirm the district court's ruling that the counts of slander (Count I), intentional infliction of emotional distress (Count II), tortious interference with contractual relations (Count III), wrongful discharge (Count VII) and any claims for loss of consortium derived therefrom are preempted and consequently barred by the statute of limitations. The remaining counts alleging malicious prosecution (Count IV), false arrest (Count V), libel against John Lewis (Count VI) and any derivative loss of consortium claims are not preempted. Therefore, these remaining counts are reinstated and remanded to the district court for further proceedings consistent with this opinion.