# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3081

_____

| | | |
|---|---|---|
| Richard E. Graham, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Contract Transportation, Inc.; | * | |
| James Nible; Jeane M. Nible; | * | |
| Concentra Managed Care | * | |
| Services, Inc.; Concentra Health | * | |
| Services, Inc.; and W. Thomas | * | |
| Fogarty, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: March 16, 2000

Filed: August 11, 2000

_____

Before McMILLIAN, FLOYD R. GIBSON,[1] and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

---

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.

Richard Graham filed a complaint against the defendants, asserting several state-law claims arising out of an employment dispute between him and his employer, Contract Transportation (CT). The district court granted summary judgment to all of the defendants on the ground that Mr. Graham's claims were preempted by § 301 of the Labor Management Relations Act of 1947, *see* 29 U.S.C. § 185(a). We affirm in part and reverse and remand in part.

I.

When Mr. Graham, a truck driver, was required to take a random drug test by his employer, he tested positively for methamphetamine and was fired. After he learned that his drug test had not been conducted in accordance with the regulations of the U.S. Department of Transportation, he brought the discrepancies to the attention of a doctor at the testing center, who ordered the positive test result expunged. Mr. Graham then resumed his employment with CT. After CT asked the testing center why the positive test result had been expunged, the administrator of the center reviewed Mr. Graham's file and determined that the doctor who had canceled the test result had lacked the authority to do so. Mr. Graham's positive test result was reinstated, and he was again terminated from his job.

Following his termination, Mr. Graham filed a claim for unemployment benefits and was awarded those benefits in spite of CT's opposition. Mr. Graham also grieved his discharge pursuant to a collective bargaining agreement (CBA), but the arbitrator denied the claim. Mr. Graham then filed this lawsuit in state court. CT removed the case to federal district court, which ruled that Mr. Graham's claims were preempted by § 301 of the Labor Management Relations Act, *see* 29 U.S.C. § 185(a). The district court then noted that the claims had not been brought within the six-month statute of limitations that governs § 301 actions, *see* 29 U.S.C. § 160(b), and awarded summary judgment to the defendants on that ground.

On appeal, Mr. Graham contends that three of his claims, namely, tortious discharge, defamation *per se*, and defamation *per quod*, are not in fact preempted by

§ 301, and therefore were not untimely. He concedes that these claims would be untimely if they are in fact preempted by § 301, and he does not contest the adverse summary judgment on his other claims.

## II.

Iowa law provides a cause of action for tortious discharge when a matter that violates public policy is determinative in an employer's decision to take adverse action against an employee. *See Teachout v. Forest City Community School District*, 584 N.W.2d 296, 301-02 (Iowa 1998). The district court, in holding that the claim was preempted under § 301, relied on a case from the Ninth Circuit that stated that "a claim that a discharge violates public policy 'is preempted ... if it is not based on any genuine state public policy.' " *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643-44 (9th Cir. 1989), quoting *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1002 (9th Cir. 1987). Although we do not think that a finding that no recognized public policy is involved in a claim leads logically to a conclusion that that claim is preempted, we think that CT was entitled to summary judgment on this claim on the merits.

Although Iowa courts have recognized a so-called "public policy" exception to the general rule that an employee at will may be terminated for any reason or for no reason at all, *see Springer v. Weeks and Leo Co., Inc.*, 429 N.W.2d 558, 558-59 (Iowa 1988), they have stated their "strong support of the at-will presumption," *Anderson v. Douglas and Lomason Co.*, 540 N.W.2d 277, 282 (Iowa 1995), and consequently have interpreted the exception "narrow[ly]," *id.* Iowa courts have recognized tortious discharge claims only when the "termination of the employee 'is in retaliation for performing an important and socially desirable act, exercising a statutory right, or refusing to commit an unlawful act.' " *Borschel v. City of Perry*, 512 N.W.2d 565, 567 (Iowa 1994), quoting 82 Am. Jur. 2d *Wrongful Discharge* § 14, at 687 (1992).

Mr. Graham contends, first, that he was terminated as the result of a drug test that did not comport with the regulations set forth by the U.S. Department of Transportation. *See* 49 C.F.R. §§ 40.21-40.33. Although federal law can "serve as

an appropriate source for state public policy," *Smuck v. National Management Corp.*, 540 N.W.2d 669, 672 (Iowa Ct. App. 1995), we do not believe that the Iowa courts would hold that Mr. Graham can sustain an action on the facts in this case.

If Mr. Graham's claim against his employer was that he had been discharged because he had insisted on having a drug test that complied with federal law, his complaint might well have survived summary judgment. But that is not his claim. We think, instead, that the gravamen of Mr. Graham's complaint is that CT relied on an improperly conducted drug test to terminate him, which constitutes, at most, a negligent discharge. The Iowa Supreme Court has explicitly rejected the creation of a cause of action for negligent discharge, finding that imposing such a duty of care on employers "would radically alter the long recognized doctrine allowing discharge for any reason or no reason at all," *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 220 (Iowa 1996). It is, of course, the public policy of Iowa that no one should act negligently, as demonstrated in a long line of cases and in numerous statutes, *see, e.g.*, *Wiersgalla v. Garrett*, 486 N.W.2d 290, 292-93 (Iowa 1992). But only a play on words can transform every negligent discharge into a tort. *See Huegerich*, 547 N.W.2d at 220.

Mr. Graham also maintains that he was terminated in retaliation for seeking unemployment benefits. This theory was not raised in either Mr. Graham's complaint or his opposition to summary judgment below, and we agree with CT that Mr. Graham may not raise it for the first time on appeal. *See Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999), *cert. denied*, 120 S. Ct. 174 (1999). We conclude, therefore, that Mr. Graham has failed to state a claim for tortious discharge cognizable under Iowa law, and that the defendants are entitled to summary judgment on this claim on the merits.

## III.

Mr. Graham also claimed that the defendants made statements to third persons, including prospective employers and members of the state agency processing his unemployment benefits claim, that amounted to defamation *per se* and defamation *per*

*quod*. The district court found that both of these claims were preempted by § 301, because the allegedly false accusations "related to a dispute in the workplace surrounding Graham's termination under the 'just cause' provision of the CBA."

As a general matter, § 301 preempts a claim if the claim is " 'founded directly on rights created by [the CBA],' " *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 410 n.10 (1988), quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 n.5 (1987), or if a resolution of the claim is " 'substantially dependent on analysis of [the CBA],' " *Lingle*, 486 U.S. at 410 n.10, quoting *International Brotherhood of Electrical Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 859 n.3 (1987). We think that our decision in *Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356, 360 (8th Cir. 1996), *cert. denied*, 519 U.S. 1011 (1996), makes it clear that a claim is not preempted simply because it relates to a dispute in the workplace. In *Luecke*, 85 F.3d at 358, an employee sued, alleging defamation resulting from his employer's dissemination of false information about the employee's refusal to take a drug test that a CBA mandated. We rejected the employer's argument that § 301 preempted the employee's claim, notwithstanding the fact that the claim involved an event in the workplace. In that case, as here, the complaint did not attack the employer's "right to require drug tests," *id.* at 360, but instead challenged the employer's "dissemination to others of supposedly false information," *id.*

Mr. Graham's defamation claim does not rely on any rights conferred by the CBA. He is instead availing himself of a right created by state law (namely, to be free from false and harmful statements made about him to others), which is a right that is independent of any CBA. *See Lingle*, 486 U.S. at 407, and *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 258 (1994) (denying preemption where the only source of the right respondent asserts is state tort law).

Nor has our examination of the CBA revealed any clause that would have to be interpreted in order to evaluate the defamation claims. The defendants call our attention to the provisions governing the grievance process and termination for "just

cause," but we do not believe that either of these provisions is related to Mr. Graham's defamation claims. Mr. Graham does not challenge the fact that he could have been discharged for "just cause" for using methamphetamine. Indeed, Mr. Graham's defamation claims do not challenge his discharge at all. Instead, Mr. Graham complains that the defendants deliberately and falsely indicated to the state agency and to prospective employers that he had used methamphetamine. The key inquiry for a fact finder in this case, namely, whether the defendants deliberately lied about Mr. Graham using drugs, is a "purely factual" question, *Meyer v. Schnucks Markets, Inc.*, 163 F.3d 1048, 1050 (8th Cir. 1998), that requires no analysis of the meaning of the CBA. *See also Hanks v. General Motors Corp.*, 906 F.2d 341, 344 (8th Cir. 1990).

We believe that the facts of this case serve to distinguish it from *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 624 (8th Cir. 1989), upon which Mr. Graham relies, and from *Gore v. Trans World Airlines*, 210 F.2d 944 (8th Cir. 2000), which we recently decided. In both of those cases, we found that claims of slander based on statements made during the course of an employer's investigation of employee misconduct were preempted because they were " 'inextricably intertwined with consideration of the terms of the labor contract,' " *Johnson*, 876 F.2d at 623, quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see also Gore*, 210 F.3d at 950-51. In our case, however, the allegedly defamatory statements included statements that were made after the investigation and arbitration process had been completed, to third parties outside the employment relationship between Mr. Graham and CT (*i.e.*, the state agency and prospective employers).

We are aware that certain of our statements in *Johnson* might be taken to suggest that a defamation claim should always be considered "inextricably intertwined" with the terms of the labor contract, and therefore preempted, if it is based on statements that relate to a dispute in the workplace that is subject to grievance procedures under a CBA. *See Johnson*, 876 F.2d at 624. As we noted in *Meyer*, 163 F.3d at 1050-51, however, a separate line of cases has developed in this circuit that applies federal

-6-

preemption more narrowly and requires that a claim be grounded on the rights established by a CBA, or substantially dependent on an analysis of a CBA, before it may be found to be preempted. *See also Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1244 (8th Cir. 1995).

When faced with conflicting precedents we are free to choose which line of cases to follow, *see Kostelec v. State Farm Fire and Casualty Co.*, 64 F.3d 1220, 1228 n.8 (8th Cir. 1995), and we think that the narrower approach to preemption, as outlined in *Meyer*, is more faithful to Supreme Court precedent. *See Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994) ("[i]n *Lueck* and in *Lingle* ... we underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred ... as a matter of state law"), and *Lingle*, 486 U.S. at 409-10.

The defendants contend that if claims such as Mr. Graham's are not preempted arbitration will lose its intended effectiveness. We disagree. Arbitration remains the method for settling disputes that are based on the rights, duties, and processes set forth in a CBA. Expansion of the arbitration mechanism's coverage beyond these matters does not accord with the purpose of § 301: "[I]t would be inconsistent with congressional intent under [§ 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Lueck*, 471 U.S. at 212.

## IV.

The district court's grant of summary judgment to the defendants is affirmed with regard to Mr. Graham's claim of tortious discharge, and reversed with regard to his claims of defamation *per se* and defamation *per quod*. We remand the case to the district court for consideration of the merits of the defendants' remaining summary judgment motions.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.