[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION OF DEFENDANTS YALE UNIVERSITY AND KENNETH BLOUCH FOR SUMMARY JUDGMENT (#114)
On September 13, 1999, the plaintiff, Craig Grant, filed an eight-count complaint against the defendants, Yale University (Yale), Kenneth Blouch, and Brandi Blouch.[1] This action arises out of injuries and damages allegedly suffered by Grant as a result of the termination of his employment as a carpenter at Yale.
The complaint alleges that Kenneth Blouch, Grant's supervisor at Yale, and Brandi Blouch, Kenneth Blouch's adult daughter, falsely reported that Grant had left Yale during working hours in a vehicle owned by Yale in order to make a social call. Kenneth Blouch was allegedly jealous of Grant's friendship with a woman whom Kenneth Blouch was allegedly sexually harassing. The complaint further alleges that Kenneth Blouch was, at all times relevant to this action, a supervisory employee of Yale acting within the scope of his employment for Yale's benefit. Counts one, two, three and four allege defamation, invasion of privacy, tortious interference with economic expectations, and intentional infliction of emotional distress, respectively, against Brandi Blouch. Counts five and seven allege intentional and negligent infliction of emotional distress, respectively, against Kenneth Blouch. Counts six and eight allege intentional and negligent infliction of emotional distress, respectively, against Yale.
The case was claimed for a jury trial on September 29, 1999.[2] On November 15, 2002, the court, Silbert, J, granted the defendants permission to file a motion for summary judgment.[3] On December 24, 2002, Yale and Kenneth Blouch filed a motion for summary judgment on counts five, six, seven and eight of the complaint on the grounds that (1) Grant's claims are preempted by federal law; (2) Grant has failed to demonstrate that the conduct of Yale and Kenneth Blouch was extreme and outrageous; (3) Grant has not suffered severe emotional distress; and (4) Grant was not terminated from his employment at Yale.[4] As required by Practice Book § 11-18, the motion was accompanied by a supporting CT Page 4255 memorandum of law. On January 2, 2003, Grant filed a memorandum of law in opposition to summary judgment, asserting that his claims are not preempted by federal law and that whether conduct is extreme and outrageous presents a genuine issue of material fact.
"The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried."Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989). "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) LaFlamme v. Dallessio, 261 Conn. 247, 250, 802 A.2d 63
(2002). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Buell Industries,Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527, 550, 791 A.2d 489
(2002). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988).
Yale and Kenneth Blouch move for summary judgment on counts five, six, seven and eight on the grounds that (1) Grant's claims for intentional and negligent infliction of emotional distress are preempted by § 301 of the Labor Management Relations Act (LMRA); (2) Grant fails to demonstrate that the conduct of Yale and Kenneth Blouch was extreme and outrageous; and (3) Grant has not suffered severe emotional distress.
In support of the motion, Yale and Kenneth Blouch submit (1) an uncertified[5] copy of a portion of the deposition testimony of Grant; (2) an uncertified copy of a letter signed by Brandi Blouch and one Ronald Nettleton, stating that on April 10, 1998, at approximately 1:00 p.m., they witnessed a male individual wearing a Yale uniform and driving a Yale truck visiting a woman who lived in the Ferndale Condominium complex in Branford; (3) an uncertified copy of an interoffice memorandum from Yale, showing that Grant was assigned to work a carpentry shift from 7:50 a.m. to 4:20 p.m. on Good Friday, April 10, 1998; (5) an uncertified copy of Grant's statement of earnings and deductions from Yale for the period ending April 1, 2000, and a copy of a check dated April 6, 2000 CT Page 4256 made payable to Grant in the amount of $15,224.79; (6) a certified copy of the interrogatories and list of documents requested by Yale and Kenneth Blouch; (7) a certified copy of Yale's appeal from the unemployment proceedings, stating that Grant had been discharged on May 11, 1998 for wilful misconduct; (8) an uncertified copy of a signed letter to Craig Grant from Henry O'Neill, the superintendent of the physical plant at Yale, reinstating Grant as a Yale employee and reducing his discipline from discharge to suspension without pay; (9) an uncertified copy of portions of the collective bargaining agreement between Yale and Local 34, Federation of University Employees; (9) the sworn affidavit of Santo Galatioto, senior relations representative of Yale, attesting to his belief that Grant was off campus during working hours on April 10, 1998; and (10) the sworn affidavit of O'Neill, attesting that the Yale vehicle designated as "PP-27" had been signed out to Grant on April 10, 1998, and that that same vehicle had been reported to be at a condominium complex in Branford on that day.
Grant counters that his claims are not preempted by the LMRA because they do not require the court actually to interpret the collective bargaining agreement. Moreover, Grant asserts that his claims for intentional and negligent infliction of emotional distress present genuine issues of material fact. In support of his opposition, Grant submits a certified copy of his responses to the interrogatories and request for production submitted to him by Yale and Kenneth Blouch, as well as a certified copy of the entire transcript of his deposition testimony.
 A
Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Labor Management Relations (Taft-Hartley) Act § 301(a), 29 U.S.C.S. § 185(a) (Law. Co-op. 1993). "Under § 301 of the [LMRA], federal labor law displaces state law in cases that are substantially dependent upon an analysis of the terms of a labor contract or require an interpretation of such an agreement for their resolution." Barbieri v. United Technologies Corp., 255 Conn. 708, 723,771 A.2d 915 (2001). Preemption is especially suited for such cases because "[t]he subject matter of § 301(a) is peculiarly one that calls for uniform law . . . Once the collective bargain [is] made, the possibility of conflicting substantive interpretation under competing legal systems would tend to stimulate and prolong disputes as to its CT Page 4257 interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitration or judicial resolution of disputes." (Internal quotation marks omitted.) Id.
"[Not] every state-law suit asserting a right that relates in some way to a provision in the collective-bargaining agreement [however] necessarily is [preempted] by § 301. The full scope of the [preemptive] effect of federal labor-contract law remains to be fleshed out on a case-by-case basis." (Internal quotation marks omitted.) Id., 724. Indeed, the Second Circuit has recognized that "[t]he principles for deciding when a state-law claim is preempted by the LMRA are more easily expressed than applied. [W]here the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is [preempted]." (Emphasis added; internal quotation marks omitted.) Foy v. Pratt Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997). "[W]hen the meaning of contract terms is not the subject of dispute [however] the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished . . ." Lividas v. Bradshaw,512 U.S. 107, 124, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).
In the present case, the meaning of the terms in the collective bargaining agreement are not the subject of dispute. The collective bargaining agreement provides in relevant part that "[n]o non-probationary Staff Member may be disciplined or discharged except for just cause." (Defendants' Memorandum in Support of their Motion for Summary Judgment, Exhibit J, p. 9.) Yale and Kenneth Blouch assert that Grant's claims for intentional and negligent infliction of emotional distress will require the court to "determine whether `just cause' existed to terminate Grant pursuant to the collective bargaining agreement." (Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, p. 9.) The gravamen of Grant's claim, however, is that Brandi Blouch and Kenneth Blouch falsely accused him of being off campus during work hours and that Yale subsequently terminated his employment based on that false accusation. Yale and Kenneth Blouch contend that "`just cause' did exist to terminate Grant because two individuals observed Grant off campus with a university vehicle when he was scheduled to be working." (Defendants' Memorandum, p. 9.)
The question of whether Grant was at his post during working hours on April 10, 1998 is a factual issue that does not require the court to interpret the collective bargaining agreement. Grant's claim is not that he was terminated without just cause because he committed certain acts, but that he never committed those acts in the first place. Grant does not CT Page 4258 contest the meaning of "just cause" in the collective bargaining agreement, and does not quarrel with the notion that the acts of which he was accused, had they been committed, would constitute `just cause" for his termination. See Brandmeyer v. Barton, Inc. Superior Court, judicial district of Waterbury, Docket No. CV 98 0148932 (June 1, 1999, Pellegrino, J.) (allegations that are factual in nature do not depend on an interpretation of the collective bargaining agreement). Because the terms of the collective bargaining agreement are not in dispute, and because Grant's claims do not require the court actually to interpret the collective bargaining agreement, Grant's state-law action is not preempted by § 301 of the LMRA.
Yale and Kenneth Blouch cite a legion of cases to support their proposition that "[i]f the conduct [that is the cause of the claimed emotional distress] is alleged to have occurred during the course of the termination process, as part of employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require the court to evaluate the conduct of the employer in light of the terms of the [collective bargaining agreement]." (Defendants' Memorandum, p. 10.) See, e.g., Scott v. Machinists Automotive Trades Lodge No. 190,827 F.2d 589, 594 (9th Cir. 1987) (plaintiff's claims involved grievance procedure, work conditions and disciplinary formalities governed by collective bargaining agreement); Baker v. Farmers Electric Cooperative,Inc., 34 F.3d 274, 280 (5th Cir. 1994) (plaintiff claimed emotional distress due to reassignment, over which defendants claimed employer had rights under collective bargaining agreement); Kellman v. Yale-New HavenHospital, 64 F. Sup.2d 35, 36-37 (D.Conn. 1999) (collective bargaining agreement needed to be consulted as to whether defendants' discharge of plaintiff after physical confrontation on work premises was extreme and outrageous); Anderson v. Coca Cola Bottling Co., 772 F. Sup. 77, 82
(D.Conn. 1991) (plaintiff's claims for emotional distress arose out of defendants' warnings, which needed to be interpreted under collective bargaining agreement); Dittman v. General Motors Corp. — DelcoChassis Division, 941 F. Sup. 284, 288-89 (D.Conn. 1996) (plaintiff's emotional distress claims arose out of defendants' modifications of collective bargaining agreement); Ellis v. Lloyd, 838 F. Sup. 704, 708
(D.Conn. 1993) (court could not determine whether grievance filed against plaintiff was extreme and outrageous without determining what grievances were permitted under collective bargaining agreement); Almonte v.Coca-Cola Bottling Co. of New York, Inc., 959 F. Sup. 569, 577
(D.Conn. 1997) (plaintiff's rights to remain on defendant's premises and to be provided with union steward and defendant's right to discharge plaintiff for fighting dependent upon interpretation of collective bargaining agreement). None of these myriad cases, however, save one, CT Page 4259 involved a plaintiff's claim that hinged completely on a purely factual question about the employee's conduct.
The one case cited by Yale and Kenneth Blouch in which the plaintiff's entire claim relied on a purely factual determination is distinguishable from the present case. In Johnson v. Anheuser Busch, Inc., 876 F.2d 620
(8th Cir. 1989), the plaintiff alleged that he was terminated after four fellow employees falsely reported that he had slashed four tires on a car parked in the company parking lot. Id., 622. After the plaintiff grieved his discharge under the procedures set forth in the collective bargaining agreement, he was reinstated with backpay and retroactive seniority. Id.
The plaintiff then filed a state court action against the defendants, alleging slander, intentional infliction of emotional distress, tortious interference with contractual relations, malicious prosecution, false arrest, libel and wrongful discharge; the plaintiff's wife alleged loss of consortium. Id. The case was removed to federal court, and the defendants moved for summary judgment on the ground that the plaintiff's claims were preempted by § 301 of the LMRA. Id. In support of their motion, the defendants submitted, inter alia, the portion of the collective bargaining agreement that provided for the resolution of wrongful discharge allegations. Id., 624 n. 3. The District Court found that the plaintiff's claims were preempted because they were related "to the events surrounding an alleged violation of the collective bargaining agreement." (Internal quotation marks omitted.) Id., 622. The Eighth Circuit affirmed the District Court's granting of summary judgment as to the claims for slander, intentional infliction of emotional distress, tortious interference with contractual relations, wrongful discharge, and loss of consortium. Id., 625.
In the present case, Yale and Kenneth Blouch move for summary judgment on the ground that Grant's claims will require the court to interpret the meaning of the collective bargaining agreement's provision mandating that Grant could not be discharged without "just cause." As previously discussed, however, the parties do not dispute the meaning of this provision of the collective bargaining agreement. Yale and Kenneth Blouch also assert that the present action is preempted by § 301 of the LMRA because Grant's claims for emotional distress pertain to Yale's investigatory proceedings leading to his discharge. Unlike the defendants in Johnson v. Anheuser Busch, Inc., supra, 876 F.2d 620, however, Yale and Kenneth Blouch have submitted no portion of the collective bargaining agreement that would govern the proceedings by which Grant was allegedly wronged. The only portion of the collective bargaining agreement submitted by Yale and Kenneth Blouch, and therefore the only portion currently open for interpretation by the court, is the provision for discharge with "just cause." The resolution of Grant's claim thus will CT Page 4260 not require the court to interpret the one portion of the collective bargaining agreement submitted in support of the motion for summary judgment. Moreover, there is a genuine issue of material fact as to whether the conduct of which Grant is accused ever took place. Yale and Kenneth Blouch, therefore, have not met their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law with regard to preemption.
 B
In the alternative, Yale and Kenneth Blouch move for summary judgment on Grant's claims for intentional infliction of emotional distress on the ground that Grant has failed to demonstrate that their alleged conduct was extreme and outrageous. Yale and Kenneth Blouch contend that the specific conduct that Grant alleges was extreme and outrageous — requiring him to remove his uniform upon termination and referring to him as a "criminal" in Yale's appeal from the unemployment proceedings — do not rise to the requisite level to support an action for intentional infliction of emotional distress.
In support of their argument that Grant has not shown that their conduct was extreme and outrageous, Yale and Kenneth Blouch submit a portion of Grant's deposition testimony in which Grant stated that the extreme and outrageous conduct consisted of "ask[ing] me to take my clothes off and walk out of the building without being told why I was being terminated," as well as "[t]he fact that [Yale and Kenneth Blouch] were calling me a criminal." (Defendants' Memorandum, Exhibit A, p. 178.) When asked whether he considered any additional conduct of Yale and Kenneth Blouch to be extreme and outrageous, Grant responded, "That's pretty much it." (Defendants' Memorandum, Exhibit A, p. 183.) Grant also admitted that although he was asked to remove his uniform at a time when he did not have any other clothing, he was ultimately allowed to go home still wearing the uniform. (Defendants' Memorandum, Exhibit A, p. 183.) In addition, Grant stated that his termination was "heart [rending]," that he cried when he returned home, and that the resulting foreclosure of his house left him "completely embarrassed," "emotionally shook-up," and "feeling terrible," but that he never was treated by a doctor or given medication for his mental state. (Defendants' Memorandum, Exhibit A, pp. 116, 132-33.) Yale and Kenneth Blouch also submit a copy of Yale's appeal from the unemployment proceedings, stating that Grant had been discharged on May 11, 1998 for wilful misconduct. (Defendants' Memorandum, Exhibit G, p. 2.)
In support of his opposition to summary judgment, Grant submits his answers to the interrogatories of Yale and Kenneth Blouch, as well as the CT Page 4261 documents he had appended to his sworn interrogatory responses. Among these documents is a letter dated May 11, 1998 and signed by Nicholas V. Rubino, a Yale laboratory manager. In his letter, Rubino states that he was speaking to Grant on campus concerning carpentry jobs during the time of his alleged dalliance, and that Grant "was obviously [on campus] and working at the time." (Plaintiff's Memorandum, Exhibit 1 [Rubino letter].) Grant also appended copies of court documents related to the foreclosure proceedings on his home. (Plaintiff's Memorandum, Exhibit 1 [foreclosure documents].)[6]
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . ." (Internal quotation marks omitted.)Carrol v. Allstate Ins. Co., 262 Conn. 433, 442-43, 815 A.2d 119 (2003). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . Only where reasonable minds disagree does it become an issue for the jury." (Citation omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210, 757 A.2d 1059
(2000).
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Carrol v. Allstate Ins. Co., supra, 262 Conn. 443.
In the present case, Grant complains that he was ordered to remove his uniform at a time when he did not have any other outer clothing available to him, but that the order was eventually rescinded. Reasonable minds could not disagree on the conclusion that this conduct was not "atrocious," did not "go beyond all possible bounds of decency," and CT Page 4262 could not be regarded as "utterly intolerable in a civilized community," especially in light of the fact that Grant was ultimately allowed to return home still arrayed in the uniform. While the uniform incident may have been insulting or embarrassing to Grant, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Internal quotation marks omitted.) Carrol v. Allstate Ins. Co. supra, 262 Conn. 443.
Moreover, Grant's claim that he was branded a criminal by Yale during its appeal from the unemployment proceedings is unsupported by the evidence. Yale's appeal form from the unemployment proceedings unequivocally shows that Grant was discharged for "[w]ilful misconduct," and not for any type of felony or other crime. (Defendants' Memorandum, Exhibit G, p. 2.) Yale and Kenneth Blouch have therefore carried their burden of showing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law with regard to Grant's claims of intentional infliction of emotional distress.
"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . ." (Internal quotation marks omitted.) Yancey v. Connecticut Life Casualty Ins., 68 Conn. App. 556, 559, 791 A.2d 719 (2002). The only evidence referenced by Grant in his opposing memorandum, however, are the Rubino letter purportedly explaining Grant's whereabouts during work hours on April 10, 1998, and the foreclosure documents.[7] Neither of these pieces of evidence addresses the specific conduct alleged by Grant to be the grounds for his claim of intentional infliction of emotional distress, and cannot therefore be adequate to raise a genuine issue of material fact with regard to those incidents. Although it was claimed at short calendar that Grant heard from a third party that he had been labeled a criminal during the appeal proceedings, this evidence is inadmissible hearsay. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." (Internal quotation marks omitted.) Great Country Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997). Grant has thus failed to meet his burden of showing the existence of a genuine issue of material fact with regard to his claim for intentional infliction of emotional distress. The motion for summary judgment is therefore granted as to Grant's claims for intentional infliction of emotional distress.
 C
As a final matter, Yale and Kenneth Blouch move for summary judgment on CT Page 4263 Grant's claims for negligent infliction of emotional distress on the ground that their "conduct does not rise to the level necessary to sustain a negligent infliction claim." (Defendants' Memorandum, p. 28.) In support of their motion on the negligent infliction claims, Yale and Kenneth Blouch submit Brandi Blouch's letter reporting that she had seen a man fitting Grant's description and driving a Yale vehicle at her condominium complex on April 10, 1998. (Defendants' Memorandum, Exhibit B.) They also refer to portions of Grant's deposition testimony, in which Grant explained that although he did not have a nervous breakdown and never received medical treatment for his condition, he became "completely depressed" and suffered "[c]omplete embarrassment at work" and "embarrassment in front of [his] family." (Defendants' Memorandum, Exhibit A, pp. 132-33.) Grant also stated that he was merely "speculating" that Kenneth Blouch was dating Grant's friend Melody Ciardiello, and that he had heard that Kenneth Blouch was sexually harassing Ciardiello. (Defendants' Memorandum, Exhibit A, p. 34.)
In addition, Yale and Kenneth Blouch submit the affidavits of Santo Galatioto, the senior relations representative of Yale, and Henry O'Neill, the superintendent of the zones/control center physical plant of Yale, attesting that Kenneth Blouch did not participate in the disciplinary proceedings against Grant. (Defendants' Memorandum, Exhibit K [Galatioto Affidavit], ¶ 7; Exhibit L [O'Neill Affidavit], ¶ 7.) Yale and Kenneth Blouch also submit a letter signed by Richard Montgomery, zone 1 supervisor at Yale, informing Grant that he was terminated because he had been found to be off campus during working hours on April 10, 1998. (Defendants' Memorandum, Exhibit D.) Finally, Yale and Kenneth Blouch submit a letter signed by O'Neill, informing Grant that he was reinstated as a Yale employee and his discipline reduced to suspension without pay from May 11, 1998 to December 6, 1998. (Defendants' Memorandum, Exhibit H.)
Our Supreme Court has consistently "held that in order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm . . . This part of the . . . test [for a cause of action for negligent infliction of emotional distress] essentially requires that the fear or distress experienced by the plaintiffs be reasonable in light of the conduct of the defendants. If such a fear were reasonable in light of the defendants' conduct, the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be held liable. Conversely, if the fear were unreasonable in light of the defendants' conduct, the defendants would CT Page 4264 not have recognized that their conduct could cause this distress and, therefore, they would not be liable." (Citations omitted; internal quotation marks omitted.) Carrol v. Allstate Ins. Co., supra,262 Conn. 446.
In the present case, Yale and Kenneth Blouch contend that even if Grant's fear and distress were reasonable in light of his termination, "Grant has failed to prove that he did suffer from severe emotional distress which, if it were caused, might result in illness or bodily harm" because "[t]he emotional distress which Grant testified about at his deposition was limited to embarrassment." (Defendants' Memorandum, p. 31.) Both the evidence and case law, however, belie the position of Yale and Kenneth Blouch on this point. "[T]here is no logical reason for making a distinction, for purposes of determining liability, between those cases where the emotional distress results in bodily injury and those cases where there is emotional distress only . . . The only requirement is that the distress might result in illness or bodily harm." (Citation omitted; emphasis in original; internal quotation marks omitted.) Carrol v. Allstate Ins. Co., supra, 262 Conn. 448. Sufficient evidence to conclude that the plaintiff's distress might have resulted in illness or bodily harm has been found in cases where the plaintiff "could not sleep, had frequent nightmares, had a loss of appetite, and experienced depression and a sense of isolation from his community . . ."Id. In the present case, Grant testified that his termination left him "completely depressed," "changed [his] appetite," and caused him "[c]omplete embarrassment at work" and "embarrassment in front of [his] family." (Defendants' Memorandum, Exhibit A, pp. 132-33.) Such symptoms are in line with what our Supreme Court has recently held to be sufficient to constitute emotional distress severe enough that it might have resulted in illness or bodily harm. See Carrol v. Allstate Ins.Co., supra, 448.
Nonetheless, Yale and Kenneth Blouch assert that Grant "has still failed to prove facts that would sustain his burden in proving a claim for negligent infliction of emotional distress aside from the `mere act' of his termination . . ." (Defendants' Memorandum, pp. 31-32.) "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process . . . Accordingly . . . [t]he mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.)Perodeau v. Hartford, 259 Conn. 729, 750, 792 A.2d 752 (2002). CT Page 4265
In the present case, however, Grant claims that he suffered emotional distress due not only to his allegedly wrongful termination, but also to the "scheme" allegedly concocted by Kenneth Blouch and Brandi Blouch in retaliation for his friendship with a woman whom Kenneth Blouch was allegedly harassing. (Complaint, First Count, ¶ 6.) While the affidavits of both Galatioto and O'Neill attest that Kenneth Blouch did not participate in the actual proceedings leading to Grant's termination, they do not address the issue of whether Brandi Blouch and Kenneth Blouch fabricated the allegations in the first place. Galatioto attests that he found that Grant had been off campus on April 10, 1998 after Brandi Blouch was interviewed, and that it was decided to reinstate Grant after Brandi Blouch refused to testify at the arbitration proceedings. (Galatioto Affidavit, ¶¶ 5, 11.) Galatioto acknowledged that "it would be difficult to prevail in the arbitration without the testimony of Ms. Blouch . . ." (Galatioto Affidavit, ¶ 11.) Because Yale's case against Grant was based largely on Brandi Blouch's accusations, and because Galatioto acknowledged that Yale's case would most likely fail without her testimony, it is entirely possible that the accusations themselves were false. Moreover, Yale and Kenneth Blouch submit no sworn affidavit of either Brandi Blouch or Kenneth Blouch attesting to the truth of their accusations.[8] A jury could reasonably find that a false accusation that Grant was using Yale property to have a liaison with a female friend during working hours transgresses the bounds of socially tolerable behavior on the part of Brandi Blouch and Kenneth Blouch.
Because the parties do not contest the fact that "Kenneth Blouch was, at all [relevant] times . . . a supervisory employee of . . . Yale . . . acting within the scope of his employment for the benefit of . . . Yale"; (Complaint, First Count, ¶ 3), Yale is implicated in this alleged wrongdoing by Kenneth Blouch, even apart from the "mere act" of the allegedly wrongful termination itself, under the doctrine of respondeat superior. See Ali v. Community Health Care Plan, Inc.261 Conn. 143, 151, 801 A.2d 775 (2002) ("under the doctrine of respondeat superior, the defendant could be held liable for the negligent acts of its employee . . . This was not a case regarding any purported institutional negligence on the part of the defendant"). As previously discussed, a genuine issue of material fact therefore remains as to whether the accusations against Grant are true. Summary judgment is therefore denied as to Grant's claims for negligent infliction of emotional distress.
For the foregoing reasons, the defendants' motion for summary judgment is granted as to counts five and six, and denied as to counts seven and CT Page 4266 eight.
Joseph A. Licari Jr., Judge