Nasir **MOHAMMED**

v.

**AMERICAN WEST HOLDING CORP.,** d/b/a America West Airlines, Inc.; American International Group (AIG), a/k/a American Home; Jesus Gonzalez; Bob Stark; and Does I—X

No. 04CV078 (JMR/JSM).

United States District Court, D. Minnesota.

March 21, 2005.

---

John O. Murrin, III, Murrin Law Firm, Duluth, MN, for Nasir Mohammed.

Sandra L. Jezierski, Tracy J. Van Steenburgh, Halleland Lewis Nilan Sipkins & Johnson, Minneapolis, MN, for American West Holding Corp. and Does, I—X.

Andrew E. Tanick, Autumn L Huiras, Rider Bennett, Minneapolis, MN, for American International Group (AIG), Jesus Gonzalez and Bob Stark.

### ORDER

ROSENBAUM, Chief Judge.

Plaintiff, Nasir Mohammed, initiated this action in November, 2003, after being fired by America West Airlines. He claims he was subject to wrongful termination, breach of contract, and tortious interference with a contract, among other causes of action. Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. The motion was considered by Magistrate Judge Janie S. Mayeron, who issued a Report and Recommendation on August 20, 2004, recommending dismissal of all of plaintiff's claims, except the tortious interference claim against Bob Stark.

Defendant Stark has timely objected to the Magistrate's Report and Recommendation pursuant to Local Rule 72.1(c)(2). Plaintiff asks the Court to adopt the Report and Recommendation.

The Court has reviewed the record *de novo*. Based upon that review, the Court adopts the Report and Recommendation in part, but rejects the recommendation concerning plaintiff's tortious interference claim against Bob Stark. That claim is hereby dismissed for the following reasons.

### I. *Factual Findings*

The Court adopts the following portions of the Magistrate's factual findings:

Mohammed formerly worked for defendant America West as a ground operations fleet service employee. Mohammed's employment by America West was governed by the terms of a collective bargaining agreement (CBA) between America West and the union representing the fleet service employees, the Transport Workers Union of America AFL–CIO (Union).

In April 2002, Mohammed injured his knee while at work. Mohammed notified his manager, defendant Jesus Gonzalez, of the injury and filed an incident report with America West. Mohammed's treating physician, Dr. Layon, instructed Mohammed to see an orthopedist and completed a medical evaluation form for America West stating that Mohammed was not capable of performing his job duties and recommending that he return to work on April 27, 2002, with certain restrictions, and be re-evaluated on April 29, 2002.

The first orthopedist to evaluate Mohammed, Dr. Shah, recommended that Mohammed remain off work until May 6 or 7, 2002 and referred him to another

orthopaedist, Dr. Smith, because Dr. Smith had performed a previous knee surgery on Mohammed. Dr. Shah extended Mohammed's time off work until May 17, 2002, so that he could be seen by Dr. Smith. After examining Mohammed on May 17, 2002, Dr. Smith recommended that Mohammed return to sedentary work on May 20, 2002, but stated that he could not lift more than twenty pounds.

During Mohammed's time off work at America West, Mohammed continued to work at a part-time job he had begun before his knee injury. This part-time job did not involve "strenuous or similar exertion."

Regarding his leave from America West, Mohammed asserted that America West and his doctors kept him from working, that he wanted to work, and that, as such, he was put on an involuntary absence from America West, not medical leave. In addition, Mohammed also alleged that "to suggest that he violated a leave of absence policy when Defendant, America West, knew or should have known he was on such leave of absence," amounted to improper and retaliatory conduct on the part of America West.

Mohammed requested workers' compensation benefits related to his knee injury. Defendant AIG, as America West's workers' compensation insurance carrier, was notified of Mohammed's workers' compensation claim. In connection with Mohammed's workers' compensation claim, and at America West's direction, AIG videotaped Mohammed in public while he was working at his other part-time job from May 2 to May 6, 2002. The tapes showed Mohammed jumping and running while working at this other job.

Subsequently, [Bob Stark, an employee of AIG,] informed Mohammed that AIG had denied his workers' compensa-

tion benefit claim because "a video investigation documents the claimant working for a new employer without any signs of a knee injury." Mohammed asserted that the tape served as the basis for wrongfully denying him workers' compensation benefits, without seeking a medical opinion or questioning him. Moreover, Mohammed alleged that the tape showing him running and jumping "became the basis, without input from Plaintiff, of libelous and slanderous statements made by Defendants" to union representatives and others.

On May 16, 2002, America West sent a letter to Mohammed notifying him that his employment was being suspended.... On May 23, 2002, an additional letter was sent from America West to Mohammed stating that his employment was being terminated for [claiming he had physical restrictions while working for another employer and performing physical functions].

Magistrate's Report and Recommendation at 4–7, as adopted (citations and footnotes omitted).

II. *Discussion*

The Railway Labor Act ("RLA") requires arbitration of labor disputes. *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (citation omitted). Tortious interference with a contract is a state tort claim. According to defendant Stark, application of tort law here requires interpretation of the CBA, and is therefore preempted by the RLA. He is correct.

■■■■ Under the RLA, state tort claims which require interpretation of the CBA are preempted. *Hawaiian Airlines,* 512 U.S. at 261, 114 S.Ct. 2239. The Eighth Circuit Court of Appeals recognizes that a claim for tortious interference with a contract "requires examination of the collec-

tive bargaining agreement and the scope of the employment relationship." *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 624 (8th Cir.1989).[1] Such a tortious interference claim is "inextricably intertwined" with the CBA, and should be preempted. *Id.* at 624. According to plaintiff, this claim survives, because defendant Stark is not a party to the CBA, and preemption does not apply to third-parties. Plaintiff then claims preemption here would contravene public policy against tortious interference with a contract.

The Eighth Circuit has not considered whether third-party claims are subject to RLA preemption, but the Second, Fourth, Fifth, Sixth, Seventh, and Ninth Circuits have.[2] Each Circuit considering the question has found that the RLA preempts a claim for tortious interference against a third-party to the CBA.

Here, Mr. Stark, as an AIG employee, videotaped and reported plaintiff's conduct to America West Airlines. Plaintiff claims this led to his termination, and thereby tortiously interfered with his employment relationship. The flaw in this argument is that his employment relationship is bound within and subject to the CBA. The Court finds the collective bargaining agreement must necessarily be construed in order to examine the nature and scope of plaintiff's employment relationship with America West. His tortious interference claim must, therefore, be preempted.

■ Only parties to the collective bargaining agreement can invoke the rights and privileges of the agreement. See *Smith v. Evening News Ass'n*, 371 U.S. 195, 199–200, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). The question of preemption, however, is a separate issue. Plaintiff's proffered cases, which examine those parties who may affirmatively invoke the CBA, are inapposite here.

### III. *Conclusion*

For the foregoing reasons, defendant Stark's motion to dismiss the tortious interference with a contract claim is granted. The Court adopts the Magistrate's Report and Recommendation in all other respects. Accordingly, IT IS ORDERED THAT:

1. Defendant American West Holding Corp. d/b/a America West Airlines, Inc.'s motion for partial dismissal, or, in the alternative, for partial summary judgment [Docket No. 5] is granted.

2. Defendant American International Group (AIG) and Bob Stark's motion to dismiss, or, in the alternative, for summary

---

1. The preemption doctrine of the National Labor Relations Act, 29 U.S.C. § 151 et seq., may be used to assist Courts in construing the RLA. *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 383, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969).

2. See, *Baylis v. Marriott Corp.*, 906 F.2d 874, 877 (2d Cir.1990) (preempting former employee's claim against catering service that replaced her job); *Int'l Union, United Mine Workers of America v. Covenant Coal Corp.*, 977 F.2d 895, 899 (4th Cir.1992) (preempting a union's tortious interference claim against non-signatories to the collective bargaining agreement); *Kaufman, Etc. v. Allied Pilots Assoc.*, 274 F.3d 197, 202 (5th Cir.2001) (stating that preemption extends to state actions between downstream injured parties and parties to the collective bargaining agreement); *Beard v. Carrollton R.R.*, 893 F.2d 117, 122 (6th Cir.1989) (preempting former employee's tortious interference claim against former employer and employer's insurance company); *Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 726–27 (7th Cir.2000) (preempting former employee's tortious interference claim against a third-party business that reported misconduct, where that misconduct became the basis for termination); *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1411–12 (9th Cir.1991) (preempting claims of interference with prospective economic advantage against third parties where claim required interpretation of collective bargaining agreement).

judgment [Docket No. 9] is granted in part, and denied in part, as follows:

a. As to plaintiff's tortious interference with contract claim, the motion is granted.

b. As to plaintiff's claim under Minn. Stat. § 176.82, the motion is granted.

c. As to plaintiff's defamation claim, the motion is denied.