ASA LEE DALE, APPELLANT, V. THOMAS FUNERAL HOME, INC.,
APPELLEE.

466 N.W.2d 805

Filed March 15, 1991.   No. 88-912.

Robert E. O'Connor, Jr., of Robert E. O'Connor & Associates, for appellant.

David M. Woodke and Lynn A. Mitchell, of Gross & Welch, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Asa Lee Dale sued Thomas Funeral Home, Inc., for intentional infliction of emotional distress resulting from a

refusal to release the corpse of Dale's husband until an embalming bill was paid. The district court directed a verdict for Thomas. Dale appeals, and we affirm.

## STANDARD OF REVIEW

A party against whom a motion to dismiss is directed is entitled to have all relevant evidence accepted or treated as true, every controverted fact as favorably resolved, and every beneficial inference reasonably deducible from the evidence. [Citation omitted.]

"A court cannot decide an issue as a matter of law unless the facts adduced on an issue are such that reasonable minds can draw but one conclusion from the evidence. [Citation omitted.] In a jury trial, when evidence compels but one reasonable conclusion regarding an issue or question in the litigation, a court can properly direct a verdict on such issue or question."

*Burns v. Veterans of Foreign Wars*, 231 Neb. 844, 850, 438 N.W.2d 485, 489-90 (1989). Accord, *Anderson v. Union Pacific RR. Co.*, 229 Neb. 321, 426 N.W.2d 518 (1988); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

A "prima facie case" means that evidence sufficiently establishes elements of a cause of action and, notwithstanding a motion for a directed verdict in a jury trial or a motion to dismiss in a nonjury trial, allows submission of the case to the fact finder for disposition. See, *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *White v. Abrams*, 495 F.2d 724 (9th Cir. 1974).

## BACKGROUND

On June 11, 1985, Dale's husband died. After the Dale family contacted Thomas for burial arrangements, Thomas obtained the corpse and permission to embalm. On June 12, Dale and members of her family met with Janet Caston, the funeral director at Thomas, to discuss funeral options and costs. Dale's only funeral funds were proceeds from two $500 life insurance policies on Dale's husband. Those policies were delivered to Thomas. When Thomas indicated that the cost of the funeral would be $2,800, Dale realized that she was unable to afford Thomas and decided to seek another funeral home

which might provide less expensive arrangements.

On June 14 or 15, Dale telephoned Caston, asked how much she owed Thomas, and told Caston that another funeral home would handle the burial arrangements. Caston replied that Dale owed $490 for embalming the corpse of Dale's husband and that the debt must be paid in cash, not by check, before Thomas would release the embalmed corpse. Dale offered to allow Thomas to retain one of the $500 insurance policies in exchange for release of the corpse, but Caston refused. When the embalming bill was paid, Thomas released the corpse, which was buried on June 24.

Dale testified regarding her conversation with Caston and the refusal to release the corpse:

Q. How did that make you feel, Mrs. Dale?

A. . . . . I felt terrible, awful. I didn't even know which way to go. I couldn't sleep. I couldn't eat or nothing. Just made me so nervous and everything.

. . . .

Q. Did you try to get help from others?

A. Well, no. I started once to ask my brother but I wouldn't because I didn't want to, you know, ask nobody to help us get him put away.

. . . .

Q. Did it all embarrass you?

A. Yes, it did, terrible.

. . . .

Q. Mrs. Dale, could you describe for the Court and jury what type of emotional problems you had as a result of the actions of the Thomas Funeral Home?

A. Well, I don't — exactly, I had been, you know, worried about, you know, his death and then I couldn't get his body put away.

Q. Did it bother you tremendously that you couldn't get his body put away?

A. Yeah, because he — I wanted my sisters and brothers, she was here, they left their jobs to come here for the funeral and they wasn't able to stay, they had to go back.

Dale never sought medical or psychological treatment or

assistance on account of the Thomas incident.

In view of the evidence, Thomas moved for a directed verdict, which was granted, resulting in dismissal of Dale's action.

## ASSIGNMENTS OF ERROR

Dale contends that the district court committed reversible error in granting a directed verdict for Thomas and dismissing Dale's action.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The elements of a cause of action for intentional infliction of emotional distress are (1) the defendant's intentional or reckless conduct (2) which is so outrageous and so extreme that the conduct goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community and (3) which causes emotional distress so severe that no reasonable person is expected to endure that severe emotional distress. *Pick v. Fordyce Co-op Credit Assn.*, 225 Neb. 714, 408 N.W.2d 248 (1987); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985). See, also, *Hassing v. Wortman*, 214 Neb. 154, 333 N.W.2d 765 (1983) (plaintiff must show that the distress caused by the defendant's conduct is more than mere worry, anxiety, vexation, or anger); *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981) (plaintiff must show extreme emotional response to the defendant's conduct). Cf., *Pick v. Fordyce Co-op Credit Assn., supra* (a sleepless night and humiliation, by themselves, do not establish severe emotional distress); *Mindt v. Shavers*, 214 Neb. 786, 337 N.W.2d 97 (1983) (plaintiff suffered a personality disorder as a result of distress caused by the defendant's conduct).

Accepting the truth of all relevant evidence and construing the evidence most favorably to Dale, we conclude that Dale failed to prove a prima facie case of intentional infliction of emotional distress.

Under the circumstances, Thomas' conduct may be characterized as the nadir of crass commercialism and intentional or reckless conduct which was so outrageous and extreme that the conduct exceeded the bounds of decency and

toleration in a civilized community.

However, one of the elements in the cause of action for intentional infliction of emotional distress is distress so severe that no reasonable person is expected to endure that severe emotional distress. Although Dale was understandably and unquestionably perturbed, worried, and upset, the only reasonable conclusion deducible from the evidence is that Dale failed to establish that her emotional distress was so severe that no reasonable person could be expected to endure that severe emotional distress. Hence, Dale failed to prove a prima facie case based on intentional infliction of emotional distress and, therefore, was not entitled to have her case submitted to the jury. For that reason, the district court properly directed a verdict for Thomas. Accordingly, we affirm the district court's judgment and dismissal of Dale's action.

AFFIRMED.