NATHAN JAMES VOSBURG ET AL., APPELLANTS, V. CENEX-LAND O'LAKES AGRONOMY COMPANY, A CORPORATION, APPELLEE.

513 N.W.2d 870

Filed April 1, 1994.   No. S-92-191.

David Geier, of Healey & Wieland Law Firm, and, on brief, Thomas B. Dawson for appellants.

Randall L. Goyette and Brenda S. Spilker, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

CAPORALE, J.

The minor plaintiffs-appellants, Nathan James, Jason Anthony, and Shelly Lee Vosburg, by and through their next friend, Garth Thomson, hereinafter collectively referred to as the Vosburgs, seek to recover damages allegedly resulting from injuries sustained by the minors' mother, Georgia Thomson, which the Vosburgs assert were caused by the negligence of

the defendant-appellee, Cenex-Land O'Lakes Agronomy Company. Following the sustainment of Cenex-Land's demurrer, the district court dismissed the Vosburgs' petition. They appealed to the Nebraska Court of Appeals, seeking to establish that a minor has a common-law cause of action for the loss of consortium of a nonfatally injured parent. On the motion of Cenex-Land, we, pursuant to the provisions of Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 1992) and Neb. Ct. R. of Prac. 2B (rev. 1992), ordered bypass of the Court of Appeals. Following our rejection in *Guenther v. Stollberg*, 242 Neb. 415, 495 N.W.2d 286 (1993), of the Vosburgs' thesis, Cenex-Land moved for summary affirmance. We overruled the motion and directed the parties to brief whether the Vosburgs' petition stated a negligent infliction of emotional distress action. We affirm.

We recently reaffirmed that in judging whether a petition states a cause of action, a court must assume that the pleaded facts, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, the demurrer is to be overruled. If from the facts stated in the petition it appears that the plaintiff is entitled to any relief, a general demurrer will not lie. A statement of facts sufficient to constitute a cause of action means a narrative of the events, acts, and things done or omitted which shows a legal liability of the defendant to the plaintiff. *Lawyers Title Ins. Corp. v. Hoffman, post* p. 507, 513 N.W.2d 521 (1994); *Wheeler v. Nebraska State Bar Assn.*, 244 Neb. 786, 508 N.W.2d 917 (1993).

According to the petition, the mother was employed by a third party from November 1987 until June 7, 1988, performing assembly work at a warehouse in which Cenex-Land stored agricultural herbicides and pesticides. The Vosburgs allege that Cenex-Land was negligent in a variety of respects in the placement and storage of its herbicides and

pesticides.

They also claim that as a direct and proximate result of Cenex-Land's negligence, their mother sustained the following:

A. Severe organo-phosphate poisoning resulting in diarrhea, irregular menstrual periods with heavy bleeding, vomiting and painful dermatitus [sic] covering large portions of her body, abdominal cramping, numbness in her extremities, loss of hair, blurred vision, bladder spasms, insomnia and kidney dysfunction.

B. Extreme mental anguish and extreme depression in apprehension of further contact with or poisoning from toxic substances.

C. Increased risk of substantial future physical and mental harm due to the hypersensitivity to organo-phosphate pesticides and other related toxic chemicals.

D. Extreme past and present pain and suffering, and it is reasonably certain that [the] mother will sustain physical and mental pain and suffering for an indefinite period of time in the future.

E. Permanent injury and disability to her body.

F. Physical disfigurement, scarring, humiliation and loss of enjoyment of life.

G. Loss of income from gainful employment, impaired future income earning capacity.

The Vosburgs assert that as a consequence, they

have suffered great mental anguish by being forced to witness the suffering endured by their mother, whereby their own nerves and health have been seriously and permanently shocked, weakened, and impaired, and by reason of the physical and mental condition of their mother, [they] still continue to suffer in mind and body, and have been denied the care, protection, consideration, companionship, aid, advice and solace, comfort and society of their mother.

Inasmuch as we adhere to our ruling in *Guenther, supra*, that a minor child has no cause of action for the loss of the consortium of a nonfatally injured parent, the only issue is whether the petition pleads a negligent infliction of emotional

distress action.

In *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985), this court abandoned the "zone of danger" rule which required that a bystander wishing to recover damages because of negligently inflicted emotional distress prove that the plaintiff was (1) within the physical zone of danger, (2) feared for her or his own safety, and (3) suffered physically manifested mental or physical injuries as a result of the fear.

In place of the zone of danger rule, the *James* court embraced the foreseeability of the risk approach announced by the California Supreme Court in *Dillon v. Legg*, 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72 (1968), and concluded that several factors were to be considered in determining whether injury to a bystander was reasonably foreseeable. Through *James* and its progeny, this court has established that the factors to be considered in determining whether there may be recovery based upon negligent infliction of emotional distress to a bystander are whether there exists (1) a seriously injured victim as the result of the proven negligence of the defendant, (2) an intimate familial relationship with the victim, and (3) emotional distress so severe that no person could be expected to endure it. *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993); *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992); *James, supra*.

The *Haselhorst* court allowed recovery to parents who did not witness the sexual abuse of their children by a foster child, which took place over an 11-month period, but learned of it when told by another foster child, at which time the abuser was removed from the home.

In *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993), an intentional infliction of emotional distress case, the court relied on the analysis in *James* by analogy to reject an argument based upon the Restatement (Second) of Torts § 46 (1965), which would limit recovery to a plaintiff seeking recovery for conduct directed at a third party to a person who is present at the time of the conduct.

The *Nichols* court held that "[a]s we have rejected the requirement of contemporaneous observance in 'bystander recovery' cases involving negligence, logic dictates that the

same rule apply to situations involving reckless or intentional acts." 243 Neb. at 819-20, 503 N.W.2d at 180-81. In continuing its analysis, the *Nichols* court reviewed the foreseeability approach adopted in *James*, and observed:

> We set out three requirements that must be shown in order for the plaintiff to recover: (1) that a marital or intimate familial relationship existed between the plaintiff and the victim; (2) that the plaintiff's shock is, in part, a result of the manner in which the plaintiff became aware of the injury to the victim; and (3) that the foreseeable harm to the plaintiff arose from the death or serious injury of the victim. The first and third requirements are objective, while the second is subjective, dependent on the facts of the particular case.

243 Neb. at 820, 503 N.W.2d at 181.

Focusing on the second requirement articulated in *Nichols*, it is important to recall that in *James*, after noting that the psychological reaction of the plaintiff could be the same or perhaps worse upon hearing of a loss, as opposed to viewing the loss, the court stated:

> We believe that the Massachusetts Supreme Court has a better perspective on this criterion. The determination of liability for the injury sustained "depends on a number of factors, such as where, when, and how the injury, to the third person entered into the consciousness of the claimant, and what degree there was of familial or other relationship . . . ." *Dziokonski v. Babineau*, 375 Mass. 555, 568, 380 N.E.2d 1295, 1302 (1978). "A plaintiff who rushes onto the accident scene and finds a loved one injured has no greater entitlement to compensation for that shock than a plaintiff who rushes instead to the hospital. So long as the shock follows closely on the heels of the accident, the two types of injury are equally foreseeable."

*James v. Lieb*, 221 Neb. 47, 57, 375 N.W.2d 109, 116 (1985).

The determination of foreseeability requires consideration of the nature of a plaintiff's shock in terms of where, when, and how the injury to the third person entered into a plaintiff's consciousness. This is virtually always met when the plaintiff

personally observes the injury to the victim. Moving away from that most obvious end of the spectrum is the case where the plaintiff rushes to the hospital to find a seriously injured or dead victim or hears of such injury or death in a shocking manner.

Here, two factors are missing. First, there is pled no single, sudden event such as a violent injury or accident giving rise to the mother's suffering; there is no allegation she suffered her injuries suddenly. On the contrary, the inference is that her symptoms developed slowly because of exposure to chemicals. Second, notwithstanding the alleged severity of the Vosburgs' emotional and physical reactions, the manner in which they became aware of the injuries is not alleged to have been, nor can it be inferred to have been, sudden and shocking or startling such as to have produced emotional distress so severe that no person could be expected to endure it.

Accordingly, we affirm the judgment of the district court.

AFFIRMED.