GARY R. HEITZMAN, APPELLANT, V.
HARLAN THOMPSON ET AL., APPELLEES.
705 N.W.2d 426

Filed November 4, 2005. No. S-04-928.

Scott D. Freese for appellant.

George H. Moyer, Jr., of Moyer, Moyer, Egley, Fullner & Warnemunde, for appellee Harlan Thompson.

Michael J. Frey, and, on brief, Tonya A. Oetken, of Hellige, Frey & Roe, R.L.L.P., for appellees Dale B. Meyer and Cynthia Struve.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Gary R. Heitzman sued his stepbrother, Harlan Thompson; Dale B. Meyer; and Cynthia Struve for intentional infliction of emotional distress. The claim arose when Thompson, a licensed funeral director, transported and embalmed the body of Heitzman's father without notifying him. The district court sustained Thompson's demurrer and dismissed the petition because it lacked sufficient facts to state a cause of action. Heitzman appeals. Because Heitzman did not plead facts that rise to the level of outrageous conduct, his petition fails to state a cause of action for intentional infliction of emotional distress.

BACKGROUND

We summarize the factual allegations in Heitzman's petition, which for the purposes of reviewing a demurrer, we accept as true. Heitzman is the natural son of Ralph Heitzman (Ralph), who died on July 29, 2000. In addition to Heitzman, Ralph was survived by his wife, Marcella Thompson-Heitzman (Marcella), and stepson, Thompson. Thompson is a licensed funeral director in both Nebraska and Iowa.

On July 29, 2000, Thompson removed Ralph's body from his home and transported it to the Meyer Brothers Colonial Chapel, a funeral home in Sioux City, Iowa, operated by codefendants Meyer and Struve. Thompson, however, did not obtain a transit permit before moving the body. At the funeral home, Thompson embalmed Ralph's body without notifying Heitzman. Thompson

embalmed the body "under the direction and control, and pursuant to the authority of Defendants" Meyer and Struve, and in his capacity as a licensed funeral director.

Thompson also contacted the Thurston County sheriff's office, telling them that Ralph died at home and that the deputy sheriff or county coroner need not verify Ralph's death. Heitzman alleged in his amended petition that Thompson also "made false and fraudulent statements to [the] Sheriff's office relative to Ralph Heitzman dying while in hospice care," although the content of these statements was not addressed in the petition. Further, he alleged Thompson did not notify the Nebraska Bureau of Vital Statistics that Ralph's death certificate could not be completed and filed within 5 business days after the death.

In addition, the petition states that

the actions of the Defendant Harlan Thompson are outrageous, grossly immoral and dishonorable conduct by said Defendant Harlan Thompson and that the same were intentional acts, and were breaches of the obligation of the Defendant Harlan Thompson as a licensed funeral director and embalmer, towards the Plaintiff herein and constitutes [sic] Unprofessional Conduct of a Licensed Funeral Director or Embalmer of the State of Nebraska.

The petition further states that Meyer and Struve's

participation in the receipt of the body of Ralph Heitzman, the embalming of the body of Ralph Heitzman on the premises of the Meyer Brothers Colonial Chapel and the other actions of the Defendant Harlan Thompson, constitutes [sic] the permitting, aiding or abetting the gross immoral or dishonorable conduct of [Thompson] and constitute willful and intentional acts of outrageous conduct to the Plaintiff by Defendants Dale B. Meyer and Cynthia Struve, whom [sic] owed a duty of care to Plaintiff regarding the same.

Because of the defendants' actions, Heitzman has alleged "general damages consisting of pain and suffering, anxiety, sleep loss, high blood pressure, extreme emotional distress, embarrassment and public humiliation in his community, and special damages for mental health counseling, doctor visits and prescriptive medications."

Thompson demurred, claiming the petition failed to set forth facts sufficient to state a claim. Treating the demurrer as a motion pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003), the court sustained the demurrer and gave Heitzman 21 days to further plead.

After Heitzman amended his petition, Thompson filed another demurrer for failure to state a claim. The court sustained the demurrer, treating it as a rule 12(b)(6) motion. The court dismissed Heitzman's action as to Thompson, ruling that the petition failed to state a claim upon which relief could be granted and that the defects could not be cured by amendment. Heitzman then appealed, but the Nebraska Court of Appeals dismissed for lack of jurisdiction because the petition was still pending against defendants Meyer and Struve. See *Heitzman v. Thompson*, 12 Neb. App. li (No. A-03-869, Apr. 19, 2004).

On remand, Meyer and Struve demurred to Heitzman's amended petition, alleging that it failed to state a claim. The court sustained the demurrer and dismissed the action as to Meyer and Struve. Heitzman then appealed the sustaining of the demurrers and dismissing of the action.

## ASSIGNMENTS OF ERROR

Heitzman assigns that the district court erred by sustaining Thompson's demurrer to the amended petition and dismissing the action as to Thompson.

## STANDARD OF REVIEW

■ When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997).

## ANALYSIS

■ Before we address the district court's ruling on Thompson's demurrer, we pause to clarify any confusion as to what pleading rules apply. It appears that the court and the parties were confused whether the demurrer filed after January 1, 2003, should be treated as a rule 12(b)(6) motion. Neb. Rev. Stat.

§ 25-801.01 (Cum. Supp. 2004) provides that the Nebraska Rules of Pleading in Civil Actions must be followed in all civil actions filed on or after January 1, 2003. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001). Here, Heitzman filed the original petition on July 26, 2002. Thus, we treat Thompson's demurrers as demurrers, not as rule 12(b)(6) motions to dismiss.

### MEYER AND STRUVE'S DEMURRER

■ Although Heitzman appealed the sustaining of both demurrers, he assigned error only as to Thompson's demurrer. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Eicher v. Mid America Fin. Invest. Corp.*, ante p. 370, 702 N.W.2d 792 (2005). Because Heitzman does not assign as error that the court sustained Meyer and Struve's demurrer, we do not address it; we affirm the district court's order sustaining Meyer and Struve's demurrer and the dismissal of the action as to them.

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In ruling on a demurrer, the petition is to be construed liberally; if as so construed the petition states a cause of action, the demurrer must be overruled. *Vosburg v. Cenex-Land O'Lakes Agronomy Co.*, 245 Neb. 485, 513 N.W.2d 870 (1994). A statement of facts sufficient to constitute a cause of action means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Id.* But an appellate court cannot assume the existence of a fact not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Id.*

■ To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts showing (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and

(3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. See *Brandon v. County of Richardson*, 252 Neb. 839, 566 N.W.2d 776 (1997).

Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of the particular case. *Brandon v. County of Richardson, supra.* The facts must be such that when heard, an average member of the community would resent the actor and exclaim, "Outrageous!" See Restatement (Second) of Torts § 46, comment *d.* at 73 (1965).

Moreover, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities that result from living in society do not rise to the level of extreme and outrageous conduct. *Brandon v. County of Richardson, supra* (citing Restatement, *supra*). We have set a high hurdle for establishing outrageous conduct. See, e.g., *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981).

In *Davis*, the plaintiff was burned when a filling station attendant negligently splashed radiator fluid on her, burning her face, neck, and back. Because her clothes were soaked with hot radiator fluid, the plaintiff was forced to remove her shirt and part of her undergarments. The plaintiff's sister then asked the attendants for a towel so the plaintiff could cover herself, and after two or three requests, a station employee finally gave her a dirty fender cover. The two women decided to seek emergency treatment for the plaintiff and tried to leave. When the car would not start, the station attendant told them he had removed the coil wire to prevent them from leaving and that he would not replace it until they returned the fender cover. After bartering, the women convinced the attendants to trade the fender cover for an old Texaco shirt. This court found that the two were detained for a "relatively brief period of time" and held that "the conduct of the station attendants did not rise to the level of the extreme and outrageous conduct which is essential for conduct to be actionable for intentional infliction of emotional distress." *Id.* at 71, 313 N.W.2d at 223.

Heitzman, however, relying on *Dale v. Thomas Funeral Home*, 237 Neb. 528, 466 N.W.2d 805 (1991), argues that this court has recognized "a cause of action for family members due

to the mishandling of funeral and disposition arrangements." Brief for appellant at 9. The facts in *Dale*, however, are distinguishable from the facts alleged here. In *Dale*, we upheld a judgment directing a verdict for the defendant funeral home in an intentional infliction of emotional distress action brought by a grieving widow. The widow made arrangements with the funeral home and gave it permission to embalm. After discussing costs with the funeral director, the widow realized she could not afford the funeral home's services. When she sought to pay for the embalming and make arrangements with another funeral home for the burial, the funeral director refused to release the body until she paid the $490 bill in cash. The widow offered to give the funeral director a $500 insurance policy in exchange for the body, but the director refused and held the body for almost 10 days, causing some of the widow's out-of-town family members to miss the funeral.

We characterized the conduct as "the nadir of crass commercialism and [as] intentional or reckless conduct which was so outrageous and extreme that the conduct exceeded the bounds of decency and toleration in a civilized community." *Id.* at 531, 466 N.W.2d at 808. We concluded, however, that the widow failed to establish that her emotional distress was so severe that no reasonable person could be expected to endure it. *Id.*

It is correct that in *Dale v. Thomas Funeral Home, supra*, we held the funeral director's conduct to be outrageous and found that it exceeded the bounds of decency. In *Dale*, however, the funeral director's outrageous conduct could be characterized as holding the corpse hostage for a ransom. In comparison, here, the alleged facts fall short. The crux of Heitzman's petition asserts that Thompson (1) transported and embalmed Ralph's body without consulting Heitzman and (2) breached his statutory duties as a licensed funeral director.

 Heitzman's first argument incorrectly assumes that he had a right to control the disposition of Ralph's remains. Neb. Rev. Stat. § 71-1339 (Cum. Supp. 2002) controls the disposition of the remains of a deceased person. The applicable version provided:

> The right to control the disposition of the remains of a deceased person . . . unless other directions have been given by the decedent, vests in the following persons in the

order named: (1) The *surviving spouse*; (2) if the surviving spouse is incompetent or not available, or if there is no surviving spouse, adult child of the decedent . . . .

(Emphasis supplied.)

Heitzman alleges that he is Ralph's son and that Ralph was married to Marcella. Under § 71-1339, he fails to allege facts that give him control of Ralph's remains. Marcella, as the surviving spouse, controlled the disposition of Ralph's remains. Thompson's failure to consult Heitzman does not rise to outrageous conduct.

Heitzman next alleged that Thompson breached the following statutory duties: (1) transporting the corpse across state lines without a permit and (2) failing to file a timely death certificate. Assuming these facts are true, Heitzman's allegations might, at best, be characterized as unprofessional or careless—but not outrageous. Because we determine the petition fails to allege sufficient facts to state a cause of action for intentional infliction of emotional distress, we affirm.

## CONCLUSION

We conclude that Heitzman has not pled a cause of action to support recovery under a theory of intentional infliction of emotional distress. Accordingly, the order sustaining Thompson's demurrer and the dismissal of the action is affirmed.

AFFIRMED.

CONNOLLY, J., participating on briefs.