# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-1932
_____

Scott T. Richardson

*Plaintiff - Appellant*

v.

BNSF Railway Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: March 17, 2021
Filed: June 28, 2021
_____

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Scott T. Richardson sued BNSF Railway Co., alleging constructive discharge and intentional infliction of emotional distress under Nebraska law. BNSF moved

to dismiss both claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court[1] granted BNSF's motion. Richardson appeals, and we affirm.

## I.

Richardson's complaint alleged the following facts. In 2015, after eighteen years of employment with BNSF, Richardson received a new supervisor. Shortly thereafter, BNSF "pulled [Richardson] out of service," alleging that he had left a company vehicle at a hotel bar. According to the supervisor, Richardson had been drinking while driving. After a six-week investigation produced no evidence that Richardson had been drinking while driving, BNSF returned Richardson to service. BNSF then required Richardson to complete from memory expense reports related to events that had occurred before his removal. Upon identifying alleged errors in Richardson's expense reports, BNSF terminated Richardson's employment.

On January 31, 2018, an arbitration board reversed the termination, ordering BNSF "to return [Richardson] to work with his seniority intact within 30 days." However, BNSF "made no attempts to return [Richardson] to work within 30 days." When Richardson contacted the supervisor in February to discuss reinstatement, the supervisor "responded with expletive laced messages" and "threatened physical violence" as well as "further disciplinary action" against Richardson. It was not until April 2019, more than one year after the board's decision, that BNSF mailed Richardson a letter instructing him to contact a different BNSF manager on or before May 8, 2019 "to begin the reinstatement process."

Although Richardson's complaint did not detail what happened next, the record indicates, and Richardson does not deny, that he declined BNSF's invitation to return to work. Richardson's complaint did allege, however, that he "reasonably believed [BNSF] never intended to return [him] to employment, that [BNSF and its

---

[1]The Honorable John M. Gerrard, Chief Judge, United States District Court for the District of Nebraska.

employees] would continue to harass and threaten [him], that [BNSF] would discipline [him] without cause," and that BNSF "would ultimately terminate [him] without cause." According to Richardson, BNSF "deliberately rendered [his] working conditions intolerable" in order to "force [him] to quit." In addition, Richardson alleged that, by subjecting him to discipline and termination without cause and by "berating [him] with expletive laced language and threats of physical violence," BNSF and its employees engaged in "intentional or reckless" conduct that was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community," causing him to suffer "emotional distress so severe that no reasonable person should be expected to endure it."

Richardson sued BNSF in Nebraska state court, alleging constructive discharge and intentional infliction of emotional distress. BNSF removed the case to federal court on the basis of diversity jurisdiction and then moved to dismiss. The district court granted the motion, concluding that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, divested it of subject-matter jurisdiction over both of Richardson's claims and that, furthermore, Richardson had failed to state a claim of intentional infliction of emotional distress under Nebraska law. Richardson appeals.

## II.

"We review the grant of a motion to dismiss de novo." *Tholen v. Assist Am., Inc.*, 970 F.3d 979, 982 (8th Cir. 2020). On appeal, as before the district court, BNSF argues that dismissal was proper under Rule 12(b)(1) for lack of subject-matter jurisdiction and, in the alternative, that dismissal was proper under Rule 12(b)(6) for failure to state a claim.

We begin with the question whether dismissal was proper under Rule 12(b)(1). *See Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 656-57 (8th Cir. 2016) (explaining that the appellate court "must" confirm subject-matter jurisdiction before proceeding to review a dismissal under Rule 12(b)(6)). A district

court properly dismisses a complaint under Rule 12(b)(1) if the plaintiff fails to establish subject-matter jurisdiction by a preponderance of the evidence. *See OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 347 (8th Cir. 2007).

BNSF argues that the district court properly dismissed Richardson's complaint under Rule 12(b)(1) because the RLA divested the district court of subject-matter jurisdiction over both of Richardson's claims. The RLA assigns arbitration boards "exclusive jurisdiction" over claims arising out of the application or interpretation of a collective-bargaining agreement between a carrier and its employees.[2] *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 303-04 (1989). A claim arises out of the application or interpretation of a collective-bargaining agreement if it cannot be resolved without interpreting the collective-bargaining agreement. *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000). This is necessarily the case if the claim relies on rights that exist only by virtue of the collective-bargaining agreement. *Id.*

We agree with BNSF and the district court that the RLA divested the district court of subject-matter jurisdiction over Richardson's constructive-discharge claim. "The clear and oft-cited rule in Nebraska is that unless constitutionally, statutorily, or contractually prohibited, an employer, without incurring liability, may terminate an at-will employee at any time with or without reason," with a limited exception for cases in which the termination violates a "very clear mandate of public policy." *Malone v. Am. Bus. Info.*, 634 N.W.2d 788, 790, 793 (Neb. 2001). Richardson has not identified a constitutional or statutory basis for his alleged right under Nebraska law not to be discharged, constructively or otherwise; nor has he identified a "very clear mandate of public policy" that the alleged constructive discharge violated. *See id.* at 793. The only remaining source of his alleged right is thus contractual. But Richardson has identified no contract, other than the collective-bargaining agreement between BNSF and its employees, that could have given him a right not

---

[2]Richardson does not dispute that BNSF is a "carrier" within the meaning of the RLA.

to be constructively discharged. Indeed, Richardson's counsel conceded at oral argument that BNSF "could have terminated him for any reason under Nebraska law absent the collective-bargaining agreement." Richardson's constructive-discharge claim thus relied on a right that exists, if at all, only by virtue of a collective-bargaining agreement between a carrier and its employees. Therefore, the district court properly dismissed Richardson's constructive-discharge claim for lack of subject-matter jurisdiction.

We reach the opposite conclusion regarding Richardson's claim of intentional infliction of emotional distress. "[A]s long as [a] claim can be resolved without interpreting the agreement itself," the RLA does not deprive courts of subject-matter jurisdiction over it. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262-63 (1994). Here, it is possible to resolve Richardson's claim of intentional infliction of emotional distress without interpreting the collective-bargaining agreement because Richardson's complaint fails to state a claim of intentional infliction of emotional distress under Nebraska law no matter what the collective-bargaining agreement says. Therefore, the district court had subject-matter jurisdiction over Richardson's claim of intentional infliction of emotional distress, which means that dismissal under Rule 12(b)(1) was inappropriate. But the same considerations that lead us to this conclusion also lead us to the conclusion that dismissal under Rule 12(b)(6) was appropriate.

Under Rule 12(b)(6), a complaint fails to state a claim upon which relief can be granted if the plaintiff fails to plead factual content that, if true, would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory statements," *id.*, and factual allegations lacking "enough specificity to raise a right to relief above the speculative level," *Minn. Majority v. Mansky*, 708 F.3d 1051, 1055 (8th Cir. 2013) (internal quotation marks omitted), are insufficient to support a reasonable inference that the defendant is liable.

A plaintiff bringing a claim of intentional infliction of emotional distress under Nebraska law must clear "a high hurdle." *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005). Specifically, he must show that the defendant engaged in "intentional or reckless" conduct that was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community," causing the plaintiff to suffer "emotional distress so severe that no reasonable person should be expected to endure it." *Id.* at 430-31. Clearing this hurdle requires showing more than that the defendant "threat[ened]" or "insult[ed]" the plaintiff, *id.* at 431, or that the defendant breached an employment contract, *see Foreman v. AS Mid-Am., Inc.*, 586 N.W.2d 290, 296-97, 305-06 (Neb. 1998).

Here, Richardson alleged that BNSF or its employees disciplined and fired him without cause and "berat[ed him] with expletive laced language and threats of physical violence." He then recited the Nebraska Supreme Court's standard for intentional infliction of emotional distress and asserted that BNSF's and its employees' conduct met this standard. It is unnecessary to interpret the collective-bargaining agreement to conclude that these allegations do not support a reasonable inference of liability.

Richardson's allegations of discipline and termination without cause are insufficient to generate a reasonable inference of liability because discipline and termination without cause are not so outrageous that they give rise to a cause of action for intentional infliction of emotional distress under Nebraska law. If they were, then every employer who fired an employee without cause would face liability if the employee suffered severe emotional distress as a result. But Nebraska law generally permits an employer to fire an employee "at any time, with or without reason," without incurring liability. *Malone*, 634 N.W.2d at 790. True, Richardson's complaint implies that, unlike an at-will employee, he was protected by the collective-bargaining agreement against discipline and termination without cause. Under Nebraska law, however, the mere fact that otherwise legal conduct constitutes a breach of an employment contract does not render it outrageous for

-6-

purposes of intentional infliction of emotional distress. *See Foreman*, 586 N.W.2d at 296-97, 305-06. Therefore, even assuming the discipline and termination violated the collective-bargaining agreement (without interpreting the agreement to verify this assumption), we can conclude that Richardson's allegations regarding the discipline and termination do not generate a reasonable inference of liability.

The addition of allegations of "expletive laced language and threats of physical violence" does not alter this conclusion. These allegations are too general to warrant anything more than speculation that the conduct of BNSF or its employees went beyond mere "threats" and "insults," which the Nebraska Supreme Court has held are not outrageous for purposes of intentional infliction of emotional distress. *See Heitzman*, 705 N.W.2d at 431. And factual allegations lacking "enough specificity to raise a right to relief above the speculative level" are insufficient to support a reasonable inference that the defendant is liable. *Minn. Majority*, 708 F.3d at 1055 (internal quotation marks omitted). Therefore, again without interpreting the collective-bargaining agreement, we can conclude that supplementing the allegations regarding the discipline and termination with the allegations of threats and tirades is insufficient to generate a reasonable inference of liability.

Finally, we have no difficulty concluding, without looking to the collective-bargaining agreement, that the addition of Richardson's "[t]hreadbare recital[] of the elements" of intentional infliction of emotional distress and "conclusory statement[]" that the conduct of BNSF or its employees satisfied these elements is also insufficient to generate a reasonable inference of liability. *See Iqbal*, 556 U.S. at 678.

In sum, it is possible to resolve Richardson's claim of intentional infliction of emotional distress without interpreting the collective-bargaining agreement because Richardson's complaint fails to state a claim of intentional infliction of emotional distress under Nebraska law no matter what the collective-bargaining agreement says. Therefore, dismissal of Richardson's claim of intentional infliction of

emotional distress was appropriate under Rule 12(b)(6) even though not under Rule 12(b)(1).

## III.

The concurrence offers two criticisms of our analysis. First, it argues that, by treating the RLA's mandatory-arbitration provision as jurisdictional, we unnecessarily decide an open question in this circuit. *Post*, at 13-15. Second, it disagrees with our approach to resolving Richardson's claim of intentional infliction of emotional distress. *Post*, at 15-17. We address each criticism in turn.

### A.

According to the concurrence, whether the RLA's mandatory-arbitration provision is jurisdictional is an open question that we need not decide here. We disagree. It is settled law in this circuit that the RLA divests courts of subject-matter jurisdiction over claims arising out of the interpretation or application of a collective-bargaining agreement between a carrier and its employees. *See, e.g.*, *Jenisio v. Ozark Airlines, Inc. Ret. Plan for Agent & Clerical Emps.*, 187 F.3d 970, 973-74 (8th Cir. 1999). The concurrence suggests that *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006), may have cast doubt on prior circuit precedent on this point. *Post*, at 14. Even if that is correct, *but see Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 235-38 (D.C. Cir. 2013) (concluding that *Arbaugh* did not abrogate its precedents holding that the RLA's mandatory-arbitration provision is jurisdictional), we resolved this doubt in *Hastings v. Wilson*, 516 F.3d 1055, 1058-60 (8th Cir. 2008) (reaffirming that a district court "lack[s] subject matter jurisdiction" over claims arising out of the interpretation or application of a collective-bargaining agreement).

The concurrence fails to persuade us otherwise. It begins by analyzing the state of circuit law on whether RLA preemption is ordinary or complete, suggesting that perhaps *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), might permit

us to hold that RLA preemption is ordinary notwithstanding prior circuit precedent to the contrary. *Post*, at 13-14. We have our doubts. *See, e.g.*, *Griffoien v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188-89, 1192 (8th Cir. 2015) (treating circuit precedent that RLA preemption is complete as good law after discussing *Beneficial*). But set these doubts aside. The whole discussion is interesting but irrelevant. To say that RLA preemption is "ordinary" is just to say that a state-court defendant cannot invoke federal-question jurisdiction as a basis for removal simply by asserting that the plaintiff's claim arises out of the interpretation or application of the collective-bargaining agreement. *See, e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391-94 (1987). This does not imply that the RLA's mandatory-arbitration provision is nonjurisdictional. *See Trs. of Twin City Bricklayers Fringe Benefits Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 329 n.3 (8th Cir. 2006) (explaining that the proposition that a mandatory-arbitration provision precludes a claim from being litigated in federal court "is distinct from the doctrine of complete preemption used to remove state claims to federal court"). Consider, as an analogy, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* The NLRA's arbitration requirement is jurisdictional, *Gerhardson v. Gopher News Co.*, 698 F.3d 1052, 1057-59 (8th Cir. 2012), even though NLRA preemption ("*Garmon* preemption") is ordinary, *Caterpillar*, 482 U.S. at 398. The Second, Third, and Eleventh Circuits all treat the RLA the same way, holding that the RLA's mandatory-arbitration provision is jurisdictional even though RLA preemption is ordinary. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 276-77 (2d Cir. 2005); *Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 943 (3d Cir. 1988); *Geddes v. Am. Airlines*, 321 F.3d 1349, 1353-55 (11th Cir. 2003).

The only other point that the concurrence makes under the heading of whether the RLA's mandatory-arbitration provision is jurisdictional is that a circuit split exists on the question. *Post*, at 14. The concurrence puts the cart before the horse. How other circuits have decided the question is relevant only to what this panel should do assuming this circuit has not decided the question. But this circuit has decided the question. *See Hastings*, 516 F.3d at 1058-60.

-9-

B.

The concurrence's second criticism concerns our approach to resolving Richardson's claim of intentional infliction of emotional distress insofar as it was based on allegations of discipline and termination without cause. According to the concurrence, we are adopting a blanket rule "that requires a district court to resolve the merits of a state-law claim that relies on interpretation of a collective bargaining agreement in order to determine whether the claim is preempted." *Post*, at 16. The concurrence argues that this rule has peculiar implications when a case proceeds to a jury trial and, at the close of evidence, neither side is entitled to a directed verdict no matter what the collective-bargaining agreement says. *Post*, at 16.

We do not understand our holding to be as sweeping as the concurrence suggests. True, we rely on the Supreme Court's statement that the RLA does not deprive courts of subject-matter jurisdiction over a claim "as long as the . . . claim can be resolved without interpreting the agreement," *Norris*, 512 U.S. at 262-63, and a stubbornly literal interpretation of this statement may have peculiar implications if the judge must submit the case to the jury. But narrower interpretations of the statement are available. For example, one could interpret the statement to mean that as long as it is apparent from the face of the pleadings that the case can be resolved without interpreting the agreement, the court retains subject-matter jurisdiction. Or, one could interpret the statement to mean that as long as *the court* (that is, the judge) can resolve the case without interpreting the agreement, the court retains subject-matter jurisdiction. We need not decide among these and other possible interpretations today. Each of them is a fair reading of *Norris* that avoids implications such as those that worry the concurrence. And because it is apparent from the face of the complaint that Richardson's claim of intentional infliction of emotional distress can be resolved without interpreting the collective-bargaining agreement, each of them supports our analysis.

Indeed, we are hard-pressed to conjure *any* plausible interpretation of the statement in *Norris* that would permit us to conclude that Richardson's claim is

preempted even though it can be resolved under Rule 12(b)(6) without interpreting the collective-bargaining agreement. It is not even clear that the concurrence disagrees. The concurrence appears to concede that, under *Norris*, a claim is preempted only if determining whether the "right asserted" has been violated "requires interpretation of the collective bargaining agreement." *Post*, at 17. The concurrence merely insists that the "right asserted" here is "a right to be free from tortious conduct that included discipline and discharge without cause." *Post*, at 17. This suggests that the real disagreement is over whether the conduct alleged was indeed "tortious"—that is, whether Richardson has stated a claim for relief—and not whether, assuming the conduct alleged was *not* tortious, the claim is capable of resolution without interpreting the collective-bargaining agreement and thus is not preempted. Similarly, the concurrence faults us for failing to recognize that "[q]uestions of contract interpretation . . . would underlie any finding of tort liability" in this case. *Post*, at 17 (internal quotation marks omitted). This implies that there is a reading of the contract that would support liability, which again suggests that the real disagreement is over whether Richardson has stated a claim for relief. In sum, the concurrence fails to rebut our conclusion that, under *Norris*, Richardson's claim is not preempted if it can be resolved under Rule 12(b)(6) without interpreting the collective-bargaining agreement. The concurrence's criticisms seem instead to be directed at our conclusion that Richardson's claim can be resolved under Rule 12(b)(6) without interpreting the collective-bargaining agreement.

Thus, we can cheerfully concede that, if Richardson *had* alleged "tortious conduct that included discipline and discharge without cause," such that he could prove liability but only by prevailing on a "[q]uestion[] of contract interpretation," then his claim would be preempted. *See post*, at 17. But the fact is, Richardson did not allege conduct that was tortious, and thus he could not prove liability no matter what the contract means. Therefore, even if interpreting the collective-bargaining agreement might be necessary to determine the truth of the allegations, it is not necessary to resolve the claim. *See Jones v. Bock*, 549 U.S. 199, 215 (2007)

(explaining that "a complaint is subject to dismissal for failure to state a claim" if the plaintiff would not be entitled to relief even assuming the allegations are true).

Finally, the concurrence suggests that our analysis conflicts with *Carter v. Ford Motor Co.*, 121 F.3d 1146 (8th Cir. 1997), and *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir. 1989), each of which concluded that the RLA preempted a claim of intentional infliction of emotional distress under Missouri law. *Post*, at 15-17. We disagree. In neither case did we state or even imply that the plaintiff's claim was capable of resolution under Rule 12(b)(6). On the contrary, even if we assume no difference between Missouri law and Nebraska law, there are indications that the allegations in each case constituted a more plausible claim of intentional infliction of emotional distress than Richardson's. *See Carter*, 121 F.3d at 1148 (indicating that the plaintiff's claims survived until summary judgment); *Johnson*, 876 F.2d at 622 (noting the plaintiff's allegation that, on fabricated charges, the defendant not only fired him but called the police to arrest him on the spot). Furthermore, our reasoning in each case suggested that if it had been possible to dismiss the claim under Rule 12(b)(6) without interpreting the collective-bargaining agreement, then the RLA would not have preempted the claim. *See Carter*, 121 F.3d at 1149 (concluding that the claim was preempted because "a determination on the merits . . . would require the court to determine whether [the plaintiff's] discharge was warranted under the terms of the collective bargaining agreement"); *Johnson*, 876 F.2d at 623 (examining "each state-law count to determine whether interpretation of the collective bargaining agreement is necessary to resolve the count"). Therefore, given that Richardson's claim is subject to dismissal under Rule 12(b)(6) no matter what the collective-bargaining agreement says, *Carter* and *Johnson* are consistent with holding that the RLA does not preempt Richardson's claim.

**IV.**

For the foregoing reasons, we affirm.

COLLOTON, Circuit Judge, concurring in the judgment.

I would affirm the district court's dismissal of Richardson's complaint, but I differ with the majority's analysis of preemption under the Railway Labor Act, so do not join the opinion. It is also unnecessary to resolve whether the RLA divests a district court of subject matter jurisdiction over a state-law claim that depends on interpretation of a collective bargaining agreement, or whether it simply defeats the state-law claim as a matter of ordinary preemption. The district court correctly dismissed Richardson's complaint, so I concur in the judgment.

Whether the RLA divests a district court of subject matter jurisdiction over state-law claims is an open question in this circuit under current law. For a time, this court maintained that the doctrine of "complete preemption" applied under the RLA, meaning that "the pre-emptive force of [the] statute is [so] 'extraordinary,' [that] it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1084 (8th Cir. 1989) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). *Deford* cited "overwhelming case law" in support of that view, *id.* at 1085, but has been criticized for relying on "the inaccurate observation that the Supreme Court in *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320 (1972), allowed reliance on the RLA for removal jurisdiction." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 277 n.9 (2d Cir. 2005).

Our later decision in *Gore v. Trans World Airlines*, 210 F.3d 944 (8th Cir. 2000), cited *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256-59 (1994), for the proposition that "complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement." *Gore*, 210 F.3d at 949. But since the intervening decision in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003), every circuit to address the issue has concluded that complete preemption does not apply under the RLA. *See Hughes v. United Air Lines, Inc.*, 634 F.3d 391, 393-95 (7th Cir. 2011); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244-46 (9th Cir. 2009); *Sullivan*, 424 F.3d at 274-78; *Roddy v. Grand Trunk W.*

*R.R. Inc.*, 395 F.3d 318, 326 (6th Cir. 2005); *see also Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1355-57 (11th Cir. 2003) (reaching same conclusion before *Anderson*); *Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988) (same). As the Seventh Circuit explained in *Hughes*, a state-law claim "is preempted if it cannot be resolved without construing a collective bargaining agreement, but this is normal preemption—that is, a defense to be asserted in the original forum rather than a rule that the claim itself must rest on federal law." 634 F.3d at 393-94. This court has not revisited the complete preemption issue since *Anderson*, and the district court in this case had removal jurisdiction based on diversity of citizenship. *See* 28 U.S.C. §§ 1332(a)(1), 1441(a).

Setting aside the doctrine of complete preemption, there is a conflict in the circuits on whether the RLA's assignment of "jurisdiction" to an adjustment board to resolve disputes arising from interpretation of a collective bargaining agreement deprives a federal district court of subject matter jurisdiction over such a dispute. After *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), expressed concern that courts too often mischaracterize non-jurisdictional requirements as jurisdictional, one circuit held that arbitration before an adjustment board under the RLA is mandatory but not jurisdictional, *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 788-90 (6th Cir. 2012), and another held that the arbitration requirement is jurisdictional. *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 235-38 (D.C. Cir. 2013). Two others have noted the issue but declined to resolve it unnecessarily. *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 606 n.7 (9th Cir. 2019); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014). In this case, the question has not been briefed by the parties, and nothing turns on whether the preemption under the RLA "divested the district court of subject-matter jurisdiction" over Richardson's state-law claims. *Ante*, at 4. Insofar as Richardson's claims are preempted by the RLA, the district court properly dismissed them, and that is sufficient to resolve the appeal.

*See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010); *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).[3]

My difference with the majority's preemption analysis concerns Richardson's claim for intentional infliction of emotional distress based on discipline and discharge. The RLA preempts a state-law claim where resolution of the claim depends on interpretation of a collective bargaining agreement. *Norris*, 512 U.S. at 261. Richardson alleges that BNSF's "repeated discipline and termination of Plaintiff without cause" contributed to the commission of a tort under Nebraska law. The governing collective bargaining agreement contemplates that an employee may be discharged only "for cause." R. Doc. 1-4, at 69; *see* R. Doc. 8, at 6. Thus, to establish that the company disciplined and discharged him without cause, Richardson "will be required to argue the meaning of standards or duties created and defined by the governing collective bargaining agreement." *Gore*, 210 F.3d at 951. The state-law claim is therefore preempted by the RLA.

This court has resolved essentially the same issue twice before. In *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir. 1989), we held that an employee's state-law claim for intentional infliction of emotional distress was preempted by the Labor Management Relations Act, because a determination of the merits "would require us to decide whether his discharge was warranted under the terms of the collective bargaining agreement." *Id.* at 624. *Carter v. Ford Motor Co.*, 121 F.3d 1146 (8th Cir. 1997), reached the same conclusion. *Id.* at 1149; *accord Foy v. Giant Food, Inc.*, 298 F.3d 284, 288 (4th Cir. 2002); *Garley v. Sandia Corp.*, 236 F.3d

---

[3]The majority maintains that *Hastings v. Wilson*, 516 F.3d 1055 (8th Cir. 2008), already "decided" that *Arbaugh* did not supersede circuit precedent. *Ante*, at 8. But *Hastings* did not even mention *Arbaugh*, and simply cited pre-*Arbaugh* circuit precedent, so it did not resolve the issue. *See Emswiler*, 691 F.3d at 790 n.1; *United States v. Lucido*, 612 F.3d 871, 876 (6th Cir. 2010). The district court in *Hastings* dismissed the action because the RLA precluded (misstated as "preempted") a claim under ERISA. *See Norris*, 512 U.S. at 259 n.6. This court recharacterized the district court's ruling as jurisdictional without addressing the import of *Arbaugh*. *Hastings*, 516 F.3d at 1058 n.2.

1200, 1214 (10th Cir. 2001); *Saridakis v. United Airlines*, 166 F.3d 1272, 1278-79 (9th Cir. 1999) (applying the RLA). The preemption standard under the RLA is "virtually identical" to that under the LMRA, *Norris*, 512 U.S. at 260, and there is no material distinction between this case and *Carter* or *Johnson*.

The majority instead adopts a novel approach that requires a district court to resolve the merits of a state-law claim that relies on interpretation of a collective bargaining agreement in order to determine whether the claim is preempted. On that view, the court must *assume* that the employer violated the CBA and resolve the merits of the state-law claim. If the state-law claim would fail despite an assumed violation of the CBA, then the claim is not preempted.

If the employee makes out a submissible case for the state-law tort, however, then the majority's approach is more complicated. If the employer violated the CBA, but the employee would prevail based entirely on conduct of the employer *other than* the employer's violation of the CBA, then the state-law claim is not preempted. But if the employee would prevail only because the employer violated the CBA, then the tort claim is preempted. So juries evidently must be instructed to assume that an employer violated the CBA, but to render a verdict based solely on the employer's other conduct. Yet if the employer prevails with a jury, then the employer would not actually secure a judgment on the merits. Where an employee presents a submissible case based in part on the employer's assumed violation of the CBA, but does not prevail without regard to the violation, the tort claim is preempted because its resolution depends on an interpretation of the CBA. The district court (on the majority's view) lacks subject matter jurisdiction over the claim, so the jury's verdict presumably would have no effect beyond determining that the claim is preempted. In response, *ante*, at 10, the majority suggests that it might retreat from the implications of its logic—and perhaps make an arbitrary distinction between cases resolved on the pleadings and cases resolved on the evidence, or between bench trials and jury trials—but ultimately leaves the district courts with substantial uncertainty about how to proceed under this new methodology.

In my view, *Norris* and our circuit precedent call for a more straightforward and workable preemption inquiry. Where, as here, "the right asserted"—a right to be free from tortious conduct that included discipline and discharge without cause—requires interpretation of the collective bargaining agreement, the claim is preempted. *Norris*, 512 U.S. at 260 (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 218 (1985)). "Questions of contract interpretation"—*i.e.*, whether Richardson was discharged for cause—would "underlie any finding of tort liability." *Lueck*, 471 U.S. at 218. *Carter* and *Johnson* did not resolve the merits of state-law tort claims in order to determine whether those claims were preempted. Better to follow those precedents and hold that the RLA preempts Richardson's tort claim asserting liability based on discipline and termination without cause.

Richardson raises two other claims. His constructive-discharge claim is preempted. *Ante*, at 4-5. His claim for intentional infliction of emotional distress based on a different factual predicate—"expletive laced language and threats of physical violence"—is not preempted, because it is independent of the collective bargaining agreement, *see Garley*, 236 F.3d at 1214, but it fails to state a claim under Nebraska law. *See ante*, at 7; *Heitzman v. Thompson*, 705 N.W.2d 426, 431 (Neb. 2005). For these reasons, I concur in the judgment affirming the district court's dismissal of the complaint.

_____